**Lewis Roca Rothgerber LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Ann-Martha Andrews** (State Bar No. 012616)
Direct Dial: 602.262.5707
Direct Fax: 602.734.3764
E-mail:    AAndrews@LRRLaw.com
**Jason M. Porter** (State Bar No. 027475)
Direct Dial: 602.262.5763
Direct Fax: 602.734.3915
E-mail:    JPorter@LRRLaw.com

Attorneys for Defendant Hartford Life and
Accident Insurance Company

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Morales,<br><br>                    Plaintiff,<br><br>vs.<br><br>Hartford Life and Accident Insurance Company, a foreign insurer; John and Jane Does I-V; Black and White Corporations VI-X; ABC Partnerships XI-XV,<br><br>                    Defendants. | No.<br><br>**NOTICE OF REMOVAL** |

Defendant Hartford Life and Accident Insurance Company removes this action from the Maricopa County Superior Court to the United States District Court for the District of Arizona. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

## I.   Introduction.

This lawsuit involves an insurance coverage dispute. Plaintiff Juan Morales alleges that as a State of Arizona employee, he was covered under a long-term disability insurance policy that Hartford issued to the State of Arizona (Policy No. GLT-395211) (the "Policy"). Morales submitted for a long-term disability ("LTD") benefits under the Policy. Hartford paid benefits from July 13, 2011 through July 12, 2013, then terminated benefits because Morales no longer met the Policy's definition of disability. Morales filed this action against Hartford in the Maricopa County, Arizona Superior Court on July 11, 2014.

Removal is appropriate because this Court has diversity jurisdiction under 28 U.S.C. § 1332.  Diversity jurisdiction exists because the parties are diverse and all of the information, taken together, proves that it is more probable than not that the amount in controversy exceeds $75,000.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (the amount in controversy must be shown by a preponderance of the evidence).

## II. This Court Has Diversity Jurisdiction Under 28 U.S.C. § 1332.

### A. There Is Diversity Of Citizenship.

Morales alleges that he is a resident of Maricopa County, Arizona.  (Compl. ¶ 1.)  Upon information and belief, Morales is a citizen of Arizona.

Hartford is a citizen of Connecticut.  It is a Connecticut corporation with its principal place of business in Connecticut.  *See* 28 U.S.C. § 1332(c); *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (for purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the state where it is incorporated and the state where it has its principal place of business).

### B. The Amount In Controversy Exceeds $75,000.

Where there is diversity of citizenship, the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  A removing defendant need not establish the amount in controversy to a "legal certainty," but carries its burden with a preponderance of the evidence.  *Sanchez*, 102 F.3d at 404.  "In measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Forever Living Prods. U.S. Inc. v. Geyman*, 471 F. Supp. 2d 980, 986 (D. Ariz. 2006).

1. Morales's Allegations.

5057147_1

Morales alleges two causes of action: Breach of contract (Compl. ¶¶ 56-61[1]) and breach of the duty of good faith and fair dealing (bad faith) (Compl. ¶¶ 62-92). He seeks to recover compensatory damages in the form of unpaid benefits, future benefits, and emotional distress damages (Compl. ¶¶ 61, 85, 86, 88, 91 and Prayer ¶¶ A-D); punitive damages (Compl. ¶¶ 89-90 and Prayer ¶ E), and attorneys' fees (Compl. ¶ 92 and Prayer ¶ F).

      a. <u>Breach Of Contract.</u>

Morales alleges that Hartford breached the insurance contract by failing properly to administer the policy and by denying him LTD benefits. (Compl. ¶¶ 58-59.) He claims that he is permanently disabled as defined by the policy. (Compl. ¶¶ 55, 58.) He seeks damages in the form of unpaid benefits, as well as "SSA representative fees wrongfully withheld." (Compl. ¶ 61.)

      b. <u>Bad Faith.</u>

For his bad faith claim, Morales alleges among other things that Hartford failed reasonably to investigate and evaluate his claim (Comp. ¶¶ 53, 65); "deliberately distorted" the policy provisions (Compl. ¶ 64); "placed its financial interests ahead of Morales's interests" (Compl. ¶ 68); denied the claim knowing that Morales was "completely dependent on his LTD benefits for survival." (Compl. ¶ 69); manipulated the claim termination to maximize its ability to recoup an overpayment (Compl. ¶ 81); "intentionally withheld information from Morales to protect its self-interests" (Compl. ¶ 82); and mischaracterized the policy and the legal standards (Compl. ¶ 83).

Morales alleges institutional (pattern and practice) bad faith. (Compl. ¶¶ 70-73, 73.) Among other things, he alleges that Hartford has a "corporate scheme" under which it "unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion" to attain numerical "claim payment reduction goals" and "cost containment." (Compl. ¶¶ 70-71.) He alleges that Hartford "misrepresents the

---

[1] The Complaint may be found in Ex. A, Court File and Declaration of Counsel.

3

nature of its business and takes advantage of" its insureds.  (Compl. ¶ 72.)  He alleges that Hartford improperly uses information relating to the insured's "probability of prevailing" on his Social Security disability claim to approve or deny LTD claims.  (Compl. ¶ 76.)

As bad faith damages, Morales seeks both compensatory and punitive damages.  Among other things, he alleges that Hartford deprived him of "peace of mind" and caused him "mental, emotional, and financial damage."  (Compl. ¶¶ 85-86.)  He says Hartford's conduct was "inconsiderate, rude, oppressive, outrageous and in total disregard for his safety, welfare, and wellbeing."  (Compl. ¶ 87.)  He claims to have suffered "pain, anxiety, worry, mental and emotional distress, fear, feelings of insecurity, [and] feelings of hopelessness."  (Compl. ¶ 88.)  He alleges that Hartford's conduct was "willful, oppressive, malicious, [and] deceptive" and that Hartford acted "with the intent to harm or injure Morales."  (Compl. ¶ 89.)  Morales alleges that as a result of Hartford's bad faith, he "is entitled to future benefits under the Policy."  (Compl. ¶ 91.)[2]

2. <u>The Claimed Contract Benefits</u>.

The claimed insurance contract benefits alone put the amount in controversy over this Court's jurisdictional limit.  Morales seeks to recover allegedly past-due benefits.  And he seeks to accelerate and recover all future benefits.  Accordingly, the total contract benefits at issue are approximately $57,077.

The total benefits at issue are approximately $79,412.[3]  But Morales owes

---

[2] Given that the present issue is merely to determine the amount *in controversy*, the points Hartford raises in this Notice of Removal cannot be construed as an admission or concession as to any fact or claim asserted by Morales.  *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) ("[T]he pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.") (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005)) (emphasis in original).  Hartford expressly reserves the right to deny liability and assert all defenses to Morales's substantive claims, as well as to contest the amount of its alleged damages.

[3] This represents $8,644 in allegedly past-due benefits and $70,468 in allegedly due future benefits.  The calculation used the following parameters:  (a) net monthly benefit of $544.76

4

5057147_1

Hartford approximately $22,035 in reimbursement for overpaid benefits.[4]

   3. <u>The Emotional Distress And Punitive Damages Claims</u>.

In addition to the contract benefits, Morales seeks emotional distress damages and punitive damages.

When determining the amount in controversy, the Court may consider punitive damage awards rendered in other, similar cases. *See, e.g.*, *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995).  Because the facts of each case are different, the amount of the verdict rendered in one case is not necessarily indicative of what will or might occur in this case. Moreover, it is difficult to "prove" what will occur in this case without disclosure or discovery about the actual facts of this case. But the case law shows that even where the contract damages are minimal, Arizona juries have awarded significant bad faith and punitive damages.  For example:

- *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073 (1987) involved an $8,000 coverage dispute.  The jury awarded $15,000 in compensatory damages and $3.5 million in punitive damages.  *See also* Exhibit B, Summary of Arizona Bad Faith Verdicts And Settlements.

- In *Filasky v. Preferred Risk Mut. Ins. Co*., 152 Ariz. 591, 734 P.2d 76 (1987), the insurer paid all contract benefits due, but the plaintiff alleged that it unreasonably delayed payment.  The jury awarded $100,000 in bad faith damages and $1 million in punitive damages. *See also* Exhibit B, Summary of Arizona Bad Faith Verdicts And Settlements.

- In *Ronald Diamond v. General American Life Insurance Co.*, Maricopa County Superior Court, No. CV 96-02277, the jury returned a $59 million verdict in

---

(i.e., the gross monthly benefit of $1,558.81 minus the allowable deduction of $1,014.05 for Social Security benefits paid); (b) last paid date of July 12, 2013; (c) valuation date of November 7, 2014 (the date of removal); (d) maximum benefit period of age 65 (October 31, 2028); and (e) a discount rate of 4 percent on future benefits.

[4] The overpayment resulted from Morales's award of Social Security Disability Benefits, which are deductible from the LTD benefit under the Policy.

5

November 1998.  *See* Exhibit C, Trial Reporter Synopses.

- A jury in *Stephen McKendry v. General American Life Insurance Co.*, Maricopa County Superior Court, No. CV 96-754, returned a $17 million verdict in June 1999. *See* Exhibit C, Trial Reporter Synopses.

- A jury in *Greenberg v. Paul Revere Life Insurance Co.*, United States District Court, District of Arizona, No. CV99-0154-PHX-SRB, returned a punitive damage verdict of $2.4 million in December 2001. *See* Exhibit C, Trial Reporter Synopses.

- In *Joanne Ceimo v. General American Life Insurance Co.*, United States District Court, District of Arizona, No. CV2000-01386, the jury returned an $84 million verdict in April 2003.  *See* Exhibit C, Trial Reporter Synopses.

- In *Brett Leavey v. Provident Life and Accident Insurance Co.*, United States District Court, District of Arizona, No. CV02-2281-PHX-SMM, the jury returned a $19.8 million verdict in September 2005. *See* Exhibit D, Jury Verdict Form.

It is "more probable than not" that a jury would return a verdict in excess of $75,000 on the punitive damage claim. *See, e.g., Ansley v. Metropolitan Life Ins. Co.*, 215 F.R.D. 575, 577 (D. Ariz. 2003) (noting that where the plaintiff alleged that MetLife "unfairly and dishonestly" denied her claim for disability benefits and sought damages to "deter such action in the future," the amount of punitive damages at issue was more likely than not "significantly large," as evidenced by other insurance bad faith cases cited by MetLife in the notice of removal).

4. <u>The Attorneys' Fee Claim</u>

The Court must also consider Morales's claim for attorneys' fees under A.R.S. § 12-341.01. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (including attorneys' fees to calculate amount in controversy); *Goldberg v. CPC Int'l.*, 678 F.2d 1365, 1367 (9th Cir. 1982) ("attorney's fees can be taken into account in determining the amount in controversy if a statute authorizes fees to a successful

6

litigant"); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy may include attorneys' fees where recoverable by statute or contract). Attorneys handling bad faith cases typically charge a 33 to 45 percent contingent fee, and the attorneys' fees alone typically put more than $75,000 in issue.

5. Conclusion

Morales has placed in issue contract benefits of $57,077. In addition, he seeks to recover emotional distress damages, punitive damages, and attorneys' fees. The additional damages claims put more than an additional $17,923 at issue. A de minimus amount of emotional distress damages (say, $1,000), and less than a 1:1 ratio of punitive damages to compensatory damages (say, 0.3:1) would exceed this Court's minimum jurisdiction. (And this does not include any amount for attorneys' fees.)

## III. This Removal Is Timely.

1. Morales filed this action in the Maricopa County Superior Court on July 11, 2014.

2. Morales served Hartford through Arizona Department of Insurance on October 14, 2014. Hartford's agent received a copy of the process on October 15, 2014.

3. As this Notice of Removal is being filed on November 7, 2014, the removal is timely. *See* 28 U.S.C. § 1446(b).

## IV. Hartford Has Met All Other Requirements For Removal.

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

2. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446.

3. Hartford has attached to this Notice copies of all process, pleadings, and orders filed with the Superior Court prior to the filing of this Notice of Removal. *See* Exhibit A, Declaration of Counsel and State Court Filings.

4. Hartford has concurrently filed a copy of this Notice in the Maricopa County Superior Court.

7

5. Hartford has served a copy of this Notice upon Morales's counsel.

DATED this 7th day of November 2014.

                        LEWIS ROCA ROTHGERBER LLP

                        By: */s/Ann-Martha Andrews*
                              Ann-Martha Andrews
                              Jason M. Porter
                              Attorneys for Defendant Hartford Life and
                              Accident Insurance Company

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

          Erin Ronstadt
          Kristin Cox
          Caldwell & Ober, P.L.L.C.
          1940 E. Camelback Road, Ste. 150
          Phoenix, AZ  85016

          Lisa Counters
          The Counters Firm, P.C.
          16421 N. Tatum Blvd., Ste. 207
          Phoenix, AZ  85032

                      /s/ *M. McGrath*
                          LEWIS ROCA ROTHGERBER, LLP

LEWIS ROCA ROTHGERBER
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

5057147_1