# EXHIBIT A

# EXHIBIT A

## DECLARATION

Ann-Martha Andrews, upon her oath, states as follows:

1.      I am an attorney in the law firm of Lewis Roca Rothgerber LLP and am one of the attorneys representing the defendant in this matter.

2.      On November 6, 2014, paralegal Michell Denman, of my office and under my supervision, reviewed the Maricopa County Superior Court docket.

3.      Exhibit A consists of true and complete copies of all pleadings and other documents filed in the state court proceeding entitled, *Juan Morales v. Hartford Life and Accident Insurance Company, et al.*, Maricopa County Superior Court, Case No. CV2014-009601.

4.      I declare under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of November, 2014.

_____
Ann-Martha Andrews

 **CT Corporation**

**Service of Process
Transmittal**
10/15/2014
CT Log Number 525889098

| | |
|---|---|
| **TO:** | Daniela Bukowski-James<br>The Hartford<br>200 Hopmeadow Street, B1E<br>Weatogue, CT 06089 |
| **RE:** | **Process Served in Arizona** |
| **FOR:** | Hartford Life and Accident Insurance Company (Domestic State: CT) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Juan Morales, etc., Pltf. vs. Hartford Life and Accident Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Certificate, Demand, Cover Sheet, |
| **COURT/AGENCY:** | Maricopa County - Superior Court, AZ<br>Case # CV2014009601 |
| **NATURE OF ACTION:** | Insurance Litigation - Claim for Policy Benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Phoenix, AZ |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/15/2014 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Arizona |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Erin Ronstadt<br>Caldwell & Ober, PLLC<br>1940 East Camelback Road<br>Suite 150<br>Phoenix, AZ 85016<br>602-277-1745 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/16/2014, Expected Purge Date: 10/21/2014<br>Image SOP<br>Email Notification, CTSOP Lawsuits (Not Specified)<br>SOPLawsuits.Law@thehartford.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 2390 E. Camelback Road<br>Phoenix, AZ 85016 |
| **TELEPHONE:** | 602-381-9104 |

Page 1 of  1 / MH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.





**ARIZONA DEPARTMENT OF INSURANCE**
2910 North 44th Street, Suite 210
Phoenix, Arizona 85018-7269

7014 0510 0000 3489 1111

HARTFORD LIFE AND ACCIDENT INS CO
CT CORPORATION
2390 EAST CAMELBACK RD
PHOENIX AZ 85016
CV2014009601

STATE OF ARIZONA
DEPT. OF INSURANCE

OCT 1 0 2014

TIME 12:05 pm
SERVICE OF PROCESS

1  Erin Ronstadt (SBN 028362)
   Jeremy Pekas (SBN 025678)
2  Kristin Cox (SBN 030240)
   CALDWELL & OBER, P.L.L.C.
3  1940 East Camelback Road, Ste. 150
   Phoenix, AZ 85016
4  (602) 277-1745
   (602) 761-4443 Fax
5  erin@caldwellober.com
   jeremy@caldwellober.com
6  kristin@caldwellober.com

**ORIGINAL**

7  Attorneys for Plaintiff

8                    SUPERIOR COURT OF ARIZONA

9                         MARICOPA COUNTY

10 JUAN MORALES, a married man,                **CV 2014-009601**

11                                     No. CV _____

12                        Plaintiff,  **SUMMONS**

13 v.

14 HARTFORD LIFE AND ACCIDENT
   INSURANCE COMPANY; JOHN and JANE     If you would like legal advice from a lawyer,
15 DOES I-V; BLACK and WHITE              contact the Lawyer Referral Service at
                                                602-257-4434
16 CORPORATIONS VI-X; ABC PARTNERSHIPS              or
   XI-XV,                                    www.maricopalawyers.org
17                                           Sponsored by the
                                          Maricopa County Bar Association
18                        Defendant.

19

20          THE STATE OF ARIZONA to the following defendant:

21              Hartford Life and Accident Insurance Company
                        c/o Director of Insurance
22                        2910 North 44th Street
                               2nd Floor
23                        Phoenix, Arizona 85018

24          YOU ARE HEREBY SUMMONED and required to appear and defend, within the time
25 applicable, in this action in this Court. If served within Arizona, you shall appear and defend
26 within twenty (20) days after the service of the summons and complaint upon you, exclusive of
   the day of service. If served out of the State of Arizona, whether by direct service, by registered
27 or certified mail, or by publication, you shall appear and defend within thirty (30) days after the
28 service of the summons and complaint upon you is complete, exclusive of the day of service.

Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer, or plead until expiration of forty (40) days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete thirty (30) days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete thirty (30) days after the date of first publication. Direct service is complete when made. When service is made on the Arizona Corporation Commission, the corporation served shall have fifty (50) days, exclusive of the day of service, to appear and defend. **Arizona Rules of Civil Procedure 4, 4.1 and 4.2; A.R.S. § 20-222.**

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the complaint.

YOU ARE CAUTIONED that in order to appear and defend you must file an answer or proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any answer or response upon the plaintiff's attorneys.

The name and address of plaintiff's attorney are:

Erin Ronstadt
CALDWELL & OBER, P.L.L.C.
1940 East Camelback Road, Suite 150
Phoenix, Arizona 85016

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE COURT BY PARTIES AT LEAST 3 WORKING DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.**

SIGNED AND SEALED this date:     JUL 11 2014

MICHAEL K. JEANES, CLERK

By _____

S. LaSpaluto
Deputy Clerk

CALDWELL & OBER, P.L.L.C.
1940 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ 85016

Erin Ronstadt (SBN 028362)
Kristin Cox (SBN 030240)
CALDWELL & OBER, P.L.L.C.
1940 East Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745
(602) 761-4443 Fax
erin@caldwellober.com
kristin@caldwellober.com

Lisa Counters (SBN 016436)
THE COUNTERS FIRM, P.C.
16421 N. Tatum Blvd. Ste. 207
Phoenix, AZ 85032
(602) 490-0030 Voice
(888) 683-8397 Fax
Lisa@countersfirm.com

Attorneys for Plaintiff

COPY

JUL 1 1 2014

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| JUAN MORALES, a married man, | Case No. CV 2014-009601 |
| Plaintiff, | COMPLAINT |
| v. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, a foreign insurer; JOHN and JANE DOES I-V; BLACK and WHITE CORPORATIONS VI-X; ABC PARTNERSHIPS XI-XV, | |
| Defendant. | |

Plaintiff Juan Morales ("Plaintiff" or "Morales") for his Complaint against Defendant Hartford Life and Accident Insurance Company (the "Hartford") alleges as follows:

## PARTIES, VENUE AND JURISDICTION

1.      At all relevant times, Morales was a resident of Maricopa County, Arizona.

2.      The Hartford is an insurance company licensed and authorized to do business in Arizona, with its corporate headquarters located in Simsbury, Connecticut.

3.      Defendants John and Jane Does I-V, Black and White Corporations VI-X, and ABC Partnerships are fictitious Defendants; the true names and capacities, whether individual, corporate, associate or otherwise, are unknown to Morales at this time, and Morales therefore sues said Defendants by such fictitious names and will ask the leave of this Court to amend this Complaint to show their true names and capacities as if the same had been ascertained.

4.      Morales was employed by the State of Arizona (the "State") as a Mental Health Specialist from August 15, 2005 to January 13, 2011, when he was no longer able to perform the essential duties of his occupation.

5.      Effective October 1, 2009, the Hartford issued an insurance policy, Group Policy Number GLT395211 (the "Policy"), to the State for Long-Term Disability ("LTD") income insurance to certain employees of the State, including Morales.

6.      In exchange for premiums, the Hartford pays all benefits due under the LTD coverage.

7.      Morales' claims are not governed under the Employee Retirement Income Security Act of 1974 ("ERISA"), because he was employed with the State, which is organized and operated under state law. As such, the State's benefit plan is a "governmental plan" as that term is defined by 29 U.S.C. § 1002(32).

8.      Venue is proper in Maricopa County, Arizona. Morales' injuries occurred in Maricopa County, Arizona, as a result of the Hartford's bad faith refusal to pay LTD benefits.

## GENERAL ALLEGATIONS

9.      Morales' disabling conditions include:  myeloproliferative disorder; splenomegaly, hypertension, nerve damage with trembling and shaking; obesity; status

post kidney removal; gastroesophageal reflux disease (GERD); hiatal hernia; and bipolar disorder.

10.     Under the terms of the Policy, Morales is considered disabled when he is "prevented from performing one or more of the Essential Duties of [his] occupation during the Elimination Period; [his] occupation, for the first 24 months following the Elimination Period; and after that, Any Occupation."

11.     The Policy defines "Essential Duties" as "a duty that is substantial, not incidental; is fundamental or inherent to the occupation; and cannot be reasonably omitted or changed." Morales' "ability to work the number of hours in [his] regularly scheduled work week is an Essential Duty."

12.     Under the Policy, "Any Occupation means any occupation for which [Morales] [is] qualified by education, training or experience, and that has an earnings potential greater than the lesser of: the product of [his] Indexed Pre-disability Earnings and the Benefit Percentage; or the Maximum Monthly Benefit."

13.     The Hartford approved Morales' claim for LTD benefits and paid his benefits for the 24-month own occupation period from July 13, 2011 to July 12, 2013.

14.     From the very beginning of the claim, the Hartford demanded that Morales apply for Social Security Disability Insurance ("SSDI") benefits. This was so that the Hartford could offset Morales' monthly LTD benefits with any SSDI benefits. This would reduce the monthly benefit amount that the Hartford had to pay out to Morales.

15.     To avoid estimation of SSDI benefits, the Hartford required Morales to submit proof of his application for SSDI benefits.

16.     The Hartford encouraged Morales to work with The Advocator Group ("TAG").

17.     TAG is a third-party company that works closely with the Hartford on a large number of disability claims administered by the Hartford.

18.     Morales retained TAG on July 5, 2011 to represent him on his SSDI matter.

19.    TAG provided constant updates to the Hartford regarding Morales' SSDI case.

20.    TAG is a client of the Hartford and has special payment arrangements with the Hartford in exchange for the Hartford's business.

21.    On information and belief, TAG and the Hartford have a contractual relationship.

22.    TAG is the Hartford's agent.

23.    Around January 2013, the Hartford began evaluating Morales' eligibility for LTD benefits past July 13, 2013, when the Any Occupation would begin. It started reviewing his claim to see whether Morales was disabled from Any Occupation.

24.    The Any Occupation period would have started on July 13, 2013.

25.    During its review, Morales advised the Hartford that his spleen was only getting worse and that he had gone through two months of radiation with no help.

26.    On February 24, 2013, the Hartford received an Attending Physician's Statement of Functionality from Morales' oncologist and hematologist, Dr. Lee. Based on his clinical assessment, Dr. Lee opined that Morales could only sit for an hour and a half at a time for a total of six to eight hours a day, and stand for an hour at a time for a total of three to four hours a day.

27.    On March 15, 2013, the Hartford received medical records from Morales' specialists. The Hartford noted Morales' radiation treatments. It also noted that the CT "showed minimal change in size and status of the spleen which is very uncomfortable and notably enlarged." The Hartford also noted that Morales had no insurance and could not afford his medical care.

28.    The Hartford referred Morales' claim to a medical case manager ("MCM") for review. The MCM contacted Dr. Lee for further clarification of Morales' functionality and treatment. Before getting Dr. Lee's response, the MCM provided her preliminary assessment as follows, "[b]ased on conversation with clmt and review of the medical information provided reasonable the r/l's are supported... clmt condition will more than

likely not change as clmt issue inoperable, he has no money for insurance to obtain further treatment. Clmt condition is life threatening w/o further medical intervention which he cannot recv at this time due to lack of financial resources."

29.     Dr. Lee responded to the MCM's questions and stated that Morales' ability to sit and stand depended on his status and how he was feeling, but that he could sit for no more than a total of eight hours a day. Dr. Lee's statement did not retract his earlier assessment that Morales could only sit for an hour and a half at any given time.

30.     The MCM unreasonably distorted Dr. Lee's response, noting "[i]t appears [Morales] has functionality." The Hartford adopted the MCM's statement and concluded, "ee is given physical functionality and ap agrees that ee has functionality."

31.     The Hartford subsequently performed an Employability Analysis Review ("EAR") to find occupations within Morales' functionality. The Hartford improperly changed the restrictions and limitations set forth by Dr. Lee concluding, "Morales is able to sit for 1-5 hours at one time."

32.     On July 11, 2014, Morales' case manager, Barbara Brethauer, reviewed the EAR and stated, "since occupations exist within the National Economy that are within the functionality of [employee], recommend [employee] not pass TC." Ms. Brethauer prepared a draft of the denial letter and sent it to her supervisor, Crystalyn Sumera for review. Ms. Brethauer indicated, "if TL agrees with TC termination, will updated TC letter and terminate ee's ltd benefits in dcs. If TL does not agree, will continue to monitor [employee's] medical through SSD approval."

33.     On July 12, 2014, Ms. Sumera signed off on the termination concluding, "MCM discussed r/ls with AP and confirmed that EE has [full time] sedentary abilities… EE is not disabled from any occ from a physical or psych standpoint. beyond [sic] 7/13/13 and benefits should be terminated." Ms. Sumera reviewed Ms. Brethauer's denial letter and sent it back with instruction to update with "non-ERISA language."

34. Later that same day, Morales called the Hartford with information regarding his Social Security disability matter. He informed the Hartford that he had a hearing the day before, and that he was told he had been awarded benefits.

35. In light of the new information about Morales' Social Security disability award, Morales' claim was referred to another manager, Laura Avalos, for action. Ms. Avalos upheld Ms. Sumera's decision to terminate Morales' benefits.

36. The Hartford contacted Morales that same day to notify him of its decision to terminate his LTD benefits. Morales was distressed by this news, especially because the Social Security Administration (the "SSA") judge had just found him disabled the day before. Morales told the Hartford representative that he wasn't sure how he was going to live.

37. After the Hartford terminated Morales' claim, it received a copy of the SSA Administrative Law Judge ("ALJ") decision for Morales' SSDI matter. The ALG determined that Morales was disabled as of July 1, 2011.

38. Morales was retroactively awarded SSDI benefits effective July 1, 2011.

39. Despite having been found disabled by the SSA, the Hartford subsequently terminated Morales' LTD benefits on July 13, 2013, alleging that he was not deemed Disabled from Any Occupation.

40. Ms. Brethauer personally handled Morales' LTD claim denial, as well as orchestrated the Hartford's collection efforts against Morales.

41. In its September 17 and October 19, 2013 letters to Morales, the Hartford demanded repayment from Morales for the overpayment of STD and LTD benefits subject to his SSDI award.

42. The Hartford told Mr. Morales that its "decision is independent from the SSA decision," yet its decision was made with the SSA decision at the forefront of claims determination

43. Morales spent the benefits received from the Hartford long before the Social Security Administration (the "SSA") determined he was disabled.

-6-

44.    Morales did not have possession of any of the funds from the Policy payments he received from the Hartford at the time of the SSDI award. He is not in possession of Policy payments now.

45.    At the time he received his SSDI award, Morales was negative in his bank account. In fact, his truck was repossessed right before his SSA hearing, and he struggled to find another means to attend his hearing. He was and remains impoverished without any meaningful assets. He used his LTD benefits through the Hartford to pay for basic living necessities, such as rent. His Social Security award and benefits have been used in the same way: to pay for basic living expenses.

46.    Morales needed to keep his SSA to award for survival and basic expenses. Had the Hartford not improperly terminated Morales' benefits, it could have recouped its overpayment from future benefits or in a lump sum without causing significant harm to Morales. Instead, Morales had no choice but to keep his SSA award in light of the Hartford's denial.

47.    The Hartford knew as of October 10, 2013 that Morales was represented by counsel, yet it did not contact legal counsel before sending Morales' claim to collection. The Hartford sent him to collections for being "uncooperative" with TAG's efforts to collect the overpayment. The Hartford acted as an adversary to Morales by taking the drastic measure of sending him to collections without even contacting his attorney first.

48.    The Hartford and its agents contacted Morales on multiple occasions, knowing that he was represented, which was a breach of its duty of good faith and fair dealing. It was done in an effort to intimidate and harass Morales.

49.    The Hartford is seeking a repayment and to benefit from the award of SSDI benefits, while continuing to deny that Morales is disabled under the terms of the Policy.

50.    The Hartford's claims decision-making was directly motivated by whether it would be able to collect overpayment from Mr. Morales' SSDI benefits. It knew that Morales' SSDI hearing was scheduled for July 11, 2013 and intentionally delayed putting

the denial in writing or telling Morales about the termination until finding out that he was awarded SSDI benefits.

51.    The Hartford improperly kept attorneys' fees from Morales' SSA award.

52.    On October 10, 2013, Morales requested from the Hartford a complete copy of his entire claim file as allowed under applicable law.

53.    The Hartford's October 21, 2013 letter included an incomplete claim file disclosure.  In that same letter, the Hartford acknowledged that it withheld and redacted allegedly privileged information from the claim file.

54.    Morales' December 19, 2013 letter addressed the Hartford's assertion of privilege in redacting relevant information from the claim file and requested to provide evidence of how it was safeguarding Morales' LTD claim from its blatant conflict of interest.  The Hartford failed to uphold this request.

55.    Morales continues to be Disabled as defined by the Policy.

## COUNT I

## BREACH OF CONTRACT

56.    Morales incorporates his previous allegations by reference.

57.    The Hartford entered into a valid and binding contract to provide LTD benefits to Morales under the Policy if he met the definition of disability set forth in the Policy.

58.    The Hartford has failed to properly administer the Policy and has improperly denied Morales LTD benefits despite the fact that he is permanently Disabled from Any Occupation.

59.    The Hartford continues to refuse to pay Morales LTD benefits in violation of the terms of the Policy.

60.    Morales had coverage under the Policy and performed all conditions on his part to be performed under the terms of the Policy.

-8-

61.    Morales has been damaged as a result of the Hartford's failure to pay LTD benefits to which he is entitled based on the language contained in the Policy. He is also entitled to the SSA representative fees wrongfully withheld by the Hartford.

## COUNT II
### INSURANCE BAD FAITH

62.    Morales incorporates his previous allegations by reference.

63.    The Hartford unreasonably failed to investigate Morales' claim and information in support of his claim.

64.    The Hartford deliberately distorted the restrictions and limitations provided by Morales' treating providers to find that he was not disabled from Any Occupation.

65.    The Hartford breached its duty of good faith and fair dealing by the unreasonable manner in which it processed and terminated Morales' claim.

66.    The Hartford acted without proper cause in terminated Morales' claim.

67.    The Hartford's decision to terminate Morales' LTD benefits was against the weight of the medical evidence and in direct contradiction to its earlier findings that Morales' conditions were "life-threatening," "inoperable," and unlikely to change.

68.    The Hartford placed its financial interests ahead of Morales' interests, failing to act with the decency and humanity required by the duty of good faith and fair dealing.

69.    The Hartford knew that Morales did not have any other source of income and was completely dependent on his LTD benefits for survival. The Hartford also knew that Morales could not afford medical insurance to obtain further treatment with his providers.

70.    As an institution, the Hartford uses claim payment reduction goals and cost containment measures as a method of profit-making for the company.  In so doing, the

Hartford unfairly and arbitrarily reduces or denies payments on legitimate claims in an across-the-board fashion to attain its numerical reduction goals.

71.     The Hartford's cost containment measures are consistent with and a part of a corporate-wide plan and scheme.

72.     The Hartford misrepresents the nature of its business through advertising and takes advantage of its insured's lack of information and familiarity with the claims process in order to deny valid claims and reduce claim payments.

73.     The Hartford has a pattern and practice of engaging in unfair claim practices.

74.     To effectuate its claim reduction goals, the Hartford has established a business relationship with TAG that violates its duty of good faith and fair dealing.

75.     The Hartford's relationship with TAG is unknown to insureds.  The Hartford and TAG led Morales to believe that they were acting in his best interests.

76.     TAG and the Hartford communicate frequently on insureds' claim in effort for the Hartford to gauge its financial liability and potential for overpayment recovery on claims. The Hartford improperly uses information provided by TAG to approve or deny claims, including but not limited to information related to an insured's probability of prevailing on his/her SSDI matter. The Hartford uses the information supplied by TAG to gauge where its insureds are at in the SSDI process and to make strategic termination decisions on otherwise valid claims.

77.     TAG, as the SSA representative for insureds, acts improperly by serving in the Hartford's best interests instead of the best interests of the SSA claimants. Insureds, including Morales, are unaware of the frequent communications between the Hartford and TAG. TAG also takes collections efforts against insured, including Morales, contrary to the law and against the best interests of its SSA claimants.

78.     TAG should be an advocate for Morales and not for the Hartford.

79.     The Hartford's termination of Morales' LTD benefits was improper. Prior to terminating his benefits, the Hartford had notice that Morales had been awarded SSDI

benefits. The SSA's decision was credible evidence of Morales' continuing eligibility for LTD benefits past the Any Occupation date.

80.     The Hartford chose to terminate Morales' LTD benefits before obtaining additional information about the SSDI award, including the ALJ decision.

81.     The Hartford's decision to terminate Morales' LTD benefits without consideration of Morales' SSDI award is evidence of the Hartford's bad faith. It chose to terminate Morales' claim at that point so that it would not have to pay benefits past the Any Occupation period. By doing so, it would not have any future liability, but it would be able to recoup a large portion of the amounts that it had paid to Morales in the past.

82.     The Hartford intentionally withheld information from Morales to protect its self-interests by withholding and redacting relevant information from the claim file.

83.     The Hartford has repeatedly mischaracterized the legal standards governing the Policy in correspondence with Morales by falsely suggesting that Morales' benefit claim could be subject to ERISA. Hartford repeatedly acknowledged that ERISA did not govern the Policy, yet it continued to put ERISA language in its correspondence.

84.     Hartford's dual role as administrator and debtor when it came to the management of Mr. Morales' LTD claim, as well as its assertion of privilege in redacting relevant information from the claim file, evidences that it was acting in its own best interests. Hartford is both funding and administering Mr. Morales' LTD benefits claim while also actively seeking overpayment from him. Hartford's financial interests unquestionably govern its actions on this claim. Despite requests, the Hartford has refused to disclose in good faith any evidence that it safeguarded Mr. Morales' LTD claim from its Hartford's blatant conflict of interest as payer and decision maker. The Hartford's adversarial efforts to collect overpayment from Morales were improper and in bad faith.

85.     The Hartford's conduct has denied Morales the security and peace of mind he thought he possessed as a result of being insured.

86.     The Hartford's improper handling of Morales' claim caused mental, emotional, and financial damage to Morales.

87.  The Hartford's handling of Morales' claim was inconsiderate, rude, oppressive, outrageous, and in total disregard for his safety, welfare, and wellbeing.

88.  As a proximate result of the Hartford's wrongful conduct, Morales has suffered pain, anxiety, worry, mental and emotional distress, fear, feelings of insecurity, feelings of hopelessness, all to his general damage in a sum that is fair and reasonable as shown by the evidence.

89.  The Hartford's conduct towards Morales was willful, oppressive, malicious, deceptive, and was in conscious disregard of the rights of Morales, with the intent to harm or injure Morales, such that there should be an assessment of punitive damages against the Hartford in an amount appropriate to punish and deter it.

90.  The Hartford, while supposed to be acting in Morales' best interests during appeal, acted as an adversary and sent him to collections. This action alone was malicious and done with an evil mind. The Hartford had less oppressive options available to it, but it did not pursue those options or even confer in good faith with Morales' legal counsel before sending Moreales to collections. The Hartford's actions resulted in additional emotional distress and financial damage to Morales. It should be penalized for its bad faith in dealing with Morales and also on information and belief in dealing with similarly situated insureds.

91.  For the Hartford's breach of its duty of good faith and fair dealing, Morales is entitled to future benefits under the Policy.

92.  Morales is entitled to recover attorney's fees pursuant to A.R.S. § 12-341.01.

WHEREFORE, Morales prays for judgment against the Hartford as follows:

A.  For damages for loss of use of benefits in a sum to be determined at the time of trial;

B.  For damages in an amount appropriate to compensate Morales for all of his damages incurred as a result of the Hartford's breach of contract and breach of the duty of good faith and fair dealing;

C. Damages for expenses incurred in obtaining proper benefits;

D. Compensatory damages for mental, emotional and physical distress, anxiety and other incidental damages in a sum to be proved at trial;

E. Punitive and exemplary damages in an amount appropriate to punish and deter Hartford;

F. For Morales' reasonable attorneys' fees incurred in prosecuting this matter under A.R.S. § 12-341.01;

G. For costs of suit herein incurred; and

H. For such other and further relief as the Court deems proper.

DATED this 11th day of July, 2014.

CALDWELL & OBER, P.L.L.C.
and
THE COUNTERS FIRM, P.C.

By: _____
Erin Ronstadt
Kristin Cox
Lisa Counters
Attorneys for Plaintiff



Erin Ronstadt (SBN 028362)
Jeremy Pekas (SBN 025678)
Kristin Cox (SBN 030240)
CALDWELL & OBER, P.L.L.C.
1940 East Camelback Road, Ste. 150
Phoenix, AZ 85016
(602) 277-1745
(602) 761-4443 Fax
erin@caldwellober.com
jeremy@caldwellober.com
kristin@caldwellober.com

Attorneys for Plaintiff

JUL 1 1 2014

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

SUPERIOR COURT OF ARIZONA

IN AND FOR MARICOPA COUNTY

JUAN MORALES, a married man,

                          Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, a foreign
insurer; JOHN and JANE DOES I-V;
BLACK and WHITE CORPORATIONS
VI-X; ABC PARTNERSHIPS XI-XV,

                          Defendant.

No. CV 2014-009601

**CERTIFICATE OF COMPULSORY
ARBITRATION**

The undersigned certifies that the largest award sought by the Plaintiff, including punitive damages, but excluding interest, attorneys' fees, and costs **does** exceed limits set by Rule 72 of the Arizona Rules of Civil Procedure and A.R.S. §12-133 for compulsory arbitration. This case is not subject to Compulsory Arbitration.

//

//

//

//

Dated this 11th day of July, 2014.

CALDWELL & OBER, P.L.L.C.

By: _____
Erin Ronstadt
Attorney for Plaintiff

-2-

1  Erin Ronstadt (SBN 028362)
   Jeremy Pekas (SBN 025678)
2  Kristin Cox (SBN 030240)
   CALDWELL & OBER, P.L.L.C.
3  1940 East Camelback Road, Ste. 150
   Phoenix, AZ 85016
4  (602) 277-1745
   (602) 761-4443 Fax
5  erin@caldwellober.com
   jeremy@caldwellober.com
6  kristin@caldwellober.com

7  Attorneys for Plaintiff

COPY

JUL 11 2014

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

8                    SUPERIOR COURT OF ARIZONA

9                        MARICOPA COUNTY

10

11  JUAN MORALES, a married man,          No.  CV2014-009601

12                       Plaintiff,

13  v.                                    **DEMAND FOR JURY TRIAL**

14  HARTFORD LIFE AND ACCIDENT

15  INSURANCE COMPANY, a foreign
    insurer; JOHN and JANE DOES I-V;
16  BLACK and WHITE CORPORATIONS
    VI-X; ABC PARTNERSHIPS XI-XV,
17

18                       Defendant.

19

20        Pursuant to Rule 38 of the Arizona Rules of Civil Procedure, Plaintiff Juan

21  Morales, through his attorney undersigned, hereby demands for a jury trial on all counts of

22  his Complaint, which was filed with this Court on July 11, 2014:

23        Dated this 11th day of July, 2014.

24                                  CALDWELL & OBER, P.L.L.C.

25

26                                  By
                                       Erin Ronstadt
27                                     Attorney for Plaintiff

28

In the Superior Court of the State of Arizona
In and For the County of Maricopa

Case Number CV 2014-009601

## CIVIL COVER SHEET- NEW FILING ONLY
### (Please Type or Print)

Plaintiff's Attorneys Erin Ronstadt, Jeremy Pekas, Kristin Cox

Attorney Bar Numbers 028362, 025678, 030240
Plaintiff's Name(s): (List all)
Juan Morales

_____

_____

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All) _____ Hartford Life and Accident Insurance Company

(List additional defendants on page two and/or attach a separate sheet)

COPY

JUL 1 1 2014

COURT SEAL

MICHAEL K. JEANES, CLERK
S. LaSPALUTO
DEPUTY CLERK

Is Interpreter Needed? ☐ Yes ☐ No
If yes, language type: _____
Attorney/Pro Per Signature _____
To the best of my knowledge, all information is true and correct.

Plaintiff's Address:
c/o Caldwell & Ober, PLLC

1940 E. Camelback Road, Suite 150

Phoenix, AZ 85016

EMERGENCY ORDER SOUGHT:   ☐ Temporary Restraining Order   ☐ Provisional Remedy   ☐ OSC
☐ Election Challenge   ☐ Employer Sanction   ☐ Other _____
(Specify)
☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**)

☐ RULE 8(i) COMPLEX LITIGATION APPLIES. Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties.
(Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

## NATURE OF ACTION
(Place an **"X"** next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
☐ Non-Death/Personal Injury
☐ Property Damage
☐ Wrongful Death
**TORT NON-MOTOR VEHICLE:**
☐ Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort
☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation
☐ Other (Specify) _____

**MEDICAL MALPRACTICE:**
☐ Physician M.D.      ☐ Hospital
☐ Physician D.O       ☐ Other
**CONTRACTS:**
☐ Account (Open or Stated)
☐ Promissory Note
☐ Foreclosure
☐ Buyer-Plaintiff
☐ Fraud
☒ Other Contract (i.e. Breach of Contract)
☐ Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
　　☐ Six to Nineteen Structures
　　☐ Twenty or More Structures
**OTHER CIVIL CASE TYPES:**
☐ Eminent Domain/Condemnation
☐ Eviction Actions (Forcible and Special Detainers)
☐ Change of Name

**OTHER CIVIL CASE TYPES : (Continued)**
- [ ] Transcript of Judgment
- [ ] Foreign Judgment
- [ ] Quiet Title
- [ ] Forfeiture
- [ ] Election Challenge
- [ ] NCC- Employer Sanction Action (A.R.S. §23-212)
- [ ] Injunction against Workplace Harassment
- [ ] Injunction against Harassment
- [ ] Civil Penalty
- [ ] Water Rights(Not General Stream Adjudication)
- [ ] Real Property
- [ ] Sexually Violent Person (A.R.S. §36-3704)
  (Except Maricopa County)
- [ ] Minor Abortion (See Juvenile in Maricopa County)
- [ ] Special Action Against Lower Courts
  (See lower court appeal cover sheet in Maricopa)
- [ ] Immigration Enforcement Challenge (§§1-501, 1-502, 11-1051)

**UNCLASSIFIED CIVIL:**
- [ ] Administrative Review
  (See lower court appeal cover sheet in Maricopa)
- [ ] Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)
- [ ] Declaratory Judgment

- [ ] Habeas Corpus
- [ ] Landlord Tenant Dispute- Other
- [ ] Restoration of Civil Rights (Federal)
- [ ] Clearance of Records (A.R.S. §13-4051)
- [ ] Declaration of Factual Innocence (A.R.S. §12-771)
- [ ] Declaration of Factual Improper Party Status
- [ ] Vulnerable Adult (A.R.S. §46-451)
- [ ] Tribal Judgment
- [ ] Structured Settlement (A.R.S. §12-2901)
- [ ] Attorney Conservatorships (State Bar)
- [ ] Unauthorized Practice of Law (State Bar)
- [ ] Out-of-State Deposition for Foreign Jurisdiction
- [ ] Secure Attendance of Prisoner
- [ ] Assurance of Discontinuance
- [ ] In-State Deposition for Foreign Jurisdiction
- [ ] Eminent Domain– Light Rail Only
- [ ] Interpleader– Automobile Only
- [ ] Delayed Birth Certificate (A.R.S. §36-333.03)
- [ ] Employment Dispute- Discrimination
- [ ] Employment Dispute-Other
- [ ] Other _____
                    (Specify)

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

- [ ] Antitrust/Trade Regulation
- [ ] Construction Defect with many parties or structures
- [ ] Mass Tort
- [ ] Securities Litigation with many parties
- [ ] Environmental Toxic Tort with many parties
- [ ] Class Action Claims
- [ ] Insurance Coverage Claims arising from the above-listed case types
- [ ] A Complex Case as defined by Rule 8(i) ARCP

Additional Plaintiff(s)

_____

_____

_____


Additional Defendant(s)

_____

_____

_____

July 11, 2014                    Page 1



## Arizona Department of Insurance
# RECEIPT OF PAYMENT

*The mission of the Department of Insurance is to faithfully execute state insurance laws in a manner that protects insurance consumers and encourages robust competition and economic development.*

| Date: | 10/10/2014 |
|---|---|
| Receipt #: | 0040374 |

ADDITIONAL INFORMATION:
HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY - CV2014009601

**Payor/Licensee Name:** | **LAW OFFICES OF CALDWELL & OBER**

| Description of Fee | Amount |
|---|---|
| OTHER, SERVICE OF PROCESS FEES | $15.00 |
| **Transaction Total:** | **$15.00** |

| Payment Information | |
|---|---|
| Amount Paid by Check 34749: | $15.00 |
| Cash Tendered: | $0.00 |
| Change Returned: | $0.00 |
| **Payment Total:** | **$15.00** |

The Arizona Department of Insurance continually works to improve service to its customers.
Please send, fax or e-mail any ideas on how we can improve to

Scott B. Greenberg, Chief Operating Officer
2910 North 44th Street, Suite 210
Phoenix, Arizona  85018-7269
Fax: 602.364.3470
e-mail: SGreenberg@azinsurance.gov.

Integrity Attorney Services
P.O. Box 33123
Phoenix, Arizona 85067-3123

| IAS#: | 41937 |
| Atty#: 22669 | |

MICHAEL K. JEANES, CLERK
BY
D. Rodriguez DEP
FILED
14 OCT 14 PM 3: 44

## IN THE SUPERIOR COURT OF THE STATE OF
## ARIZONA IN AND FOR THE COUNTY OF MARICOPA

JUAN MORALES,
    Plaintiff(s),

vs.

HARTFORD LIFE AND ACCIDENT INSURANCE
COMPANY, et al,
    Defendant(s).

Case No. CV2014-009601

AFFIDAVIT OF
SERVICE OF PROCESS

JOSEPH BEACOM, *being duly sworn, states: That I am qualified to serve process in this cause, having been* so appointed by the court in Maricopa County, Arizona. I received the following documents in this action:

SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION; DEMAND FOR JURY TRIAL; CIVIL COVERSHEET

From CALDWELL & OBER, Erin Ronstadt, SBN 028362 on 10/9/2014, and in each instance I, personally, served a copy of each document listed above on those named below at the time and place shown, that all services, except where noted, were made within Maricopa County, Arizona.

Upon HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, by service upon the Department of Insurance in the State of Arizona, at 2910 N. 44th St. - 2nd Floor, Phoenix, Arizona 85018, on 10/10/2014 at 12:05 p.m., by leaving two sets of the above listed documents and $15.00 with Amanda Buettner, Administrative Assistant III, receiving receipt #0040374, which is attached hereto and made a part of this affidavit.

Joseph Beacom

SUBSCRIBED AND SWORN to me this 12th day of October, 2014.

Notary Public: _____
Efrain Sotelo

My Commission Expires: February 3, 2018

| $32.00 | Service(s) |
| $20.00 | Mileage (8)JB |
| $9.00 | Preparation of Affidavit/Notary |
| $ 61.00 | Total |

EFRAIN SOTELO
County of Maricopa
Notary Public
Commission # 257891
My Commission Expires
February 3, 2018

# EXHIBIT B

# EXHIBIT B

## SUMMARY
### Arizona Bad Faith Verdicts And Settlements[1]

1. *Leach v. National Union Fire Ins.*, No. CV 2001-0554 (D. Ariz. 6/11/03): *dispute*: denial of UM claim; *legal claim*: breach of contract, bad faith; *settlement*: $750,000.

2. *Miller v. American Family Mut. Ins. Co.*, No. CV 2001-00329 (D. Ariz. 10/24/03): *dispute*: alleged delay in paying claim for water damage to insured's residence; *legal claim*: breach of contract, bad faith; *verdict*: $3,800 for breach of contract, $145,000 for bad faith.

3. *Hatley v. Century National Ins. Co.*, No. CV 2000-006713 (Maricopa County Superior Court, 11/26/01): *dispute*: failure to pay household mold claim; *legal claim*: bad faith; *verdict*: $244,000 compensatory damages, $4,000,000 punitive damages.

4. *Zilisch v. State Farm Ins. Co.*, No. CV 93-05652 (Maricopa County Superior Court, 2/16/96): *dispute*: delay in paying UM claim; *legal claim*: bad faith; *verdict*: $460,000 compensatory damages, $540,000 punitive damages.

5. *Capriola v. Safeco Corp.*, No. 89-16395 (Maricopa County Superior Court, 12/20/90): *dispute*: denial of coverage for loss due to fire; *legal claims*: breach of contract, bad faith, punitive damages; *verdict*: $540,000 for breach of contract, $460,000 for bad faith, and $1.5 million for punitive damages.

6. *Great Southwest Trading Co. v. TIG Ins.*, No. CV 335067 (Pima County Superior Court, 4/21/01): *dispute*: delay in paying auto/contents theft coverage; *legal claim*: bad faith; *verdict*: $122,000 compensatory damages, $350,000 punitive damages.

7. *Rubinoff v. Cigna Healthplan of Arizona, Inc.*, No. CV 94-11479 (Maricopa County, 10/1/97): *dispute*: denial of medical coverage; *claim*: bad faith; verdict: $125,000.

8. *Anders v. State Farm Ins. Co.*, No. CV 275406 (Pima County Superior Court, 7/11/95): *dispute*: denial of uninsured motorist coverage; *legal claims*: breach of contract ($300,000 policy limit), bad faith; *settlement*: $700,000.

---

[1] See attached case descriptions from *The Trial Reporter of Central & Northern Arizona* and *The Trial Reporter of Southern Arizona*.

9. *Bergman v. Farmers Ins. Co.,* No: 260208 (Pima County Superior Court 7/19/90): *dispute:* denial of coverage for two plaintiffs' fire loss; *legal claims:* breach of contract, bad faith; *verdict:* $51,400 (breach of contract), $300,000 (general damages – $150,000 for each plaintiff), $500,000 (punitive damages).

10. *Beck v. American Travelers Life Ins. Co., Inc.,* No. CV 92-14680 (4/25/94): *dispute:* denial of health coverage; *legal claims:* breach of contract ($100,000 insurance policy benefits), bad faith; *settlement:* $206,668, plus reinstatement of policy worth $100,000.

11. *Monacelli v. Gem Ins. Co.,* No. CV 94-20715 (Maricopa County Superior Court, 5/2/97): *dispute:* denial of health coverage ($68,000 in unpaid medical expenses); *legal claims:* bad faith (against insurer), misrepresentation and negligence (by insurer's agent); *verdict:* $1 million compensatory damages ($970,000 attributed to insurer), $15 million punitive damages ($14,550,000 attributed to insurer).

12. *Audio Praxis Enterprise, Inc. v. Fireman's Fund Ins. Co.,* No. CV B-96-04779 PHX-GBN (D. Ariz., 1/26/99): *dispute:* denial of coverage for property loss due to theft ($406,864.93 unpaid claim); *legal claims:* breach of contract, bad faith, punitive damages; *judgment:* $1 million for breach of contract, bad faith and aggravated and outrageous conduct, plus attorneys' fees.

13. *Foley Tile v. Fremont Compensation Ins.,* No. CV 316503 (4/13/99): *dispute:* failure to pay $63,000 dividend; *legal claims:* breach of contract, bad faith; *settlement:* $300,000.

14. *White v. Midland Risk Ins., Co.,* CV 302461 (Maricopa County Superior Court 7/11/97): *dispute:* practices in contesting claim for uninsured motorist coverage; *legal claim:* bad faith; *verdict:* $2,580,937.50 compensatory damages.

15. *Olson v. State Farm Mutual Auto. Ins. Co.,* No. CV 96-06105 (Maricopa County Superior Court 9/8/98): *dispute:* insurer's insistence on repairing rather than "totaling" vehicle; *legal claims:* bad faith, intentional infliction of emotional distress; *verdict:* $1 million in compensatory damages and $5 million in punitive damages.

16. *Ahring v. State Farm Mutual Ins.,* No. CV 89-1883 (D. Ariz. 12/20/94): *dispute:* coverage for auto accident; *legal claim:* bad faith (colluding to avoid paying benefits); *verdict:* $910,000 to family.

17. *Winn v. American Bankers Ins. Co.,* No. CV 97-2658 PHX-SMM (D. Ariz. 1/14/00): *dispute:* insurer filed interpleader complaint without first

1350899.1

trying to obtain release for insured driver; *legal claim:* bad faith; *settlement:* $250,000.

18. *Bills v. Guarantee Fund,* No. CV 311771 (11/99): *dispute:* failure to settle for policy limit of $99,900 (insured incurred judgment of $397,000); *legal claim:* bad faith; *settlement:* $500,000.

1350899.1

## SANDRA RAMSEY LINES
### Forensic Document Examiner

6200 East Cholla Lane
Paradise Valley, Arizona 85253
480-429-3999   FAX 480-429-9777

*Former Federal Examiner*
*Retired Law Enforcement Officer*

*Identification of Handwriting, Signatures,
Typewriting, Photocopying, and Printed Matter
Distinguishing Forgery from Genuine
Analysis of Medical and Business Records
Restoration or Decipherment of Erased,
Obliterated or Hidden Writing*

*Certified Diplomate, American Board of
Forensic Document Examiners
Fellow, American Academy of Forensic Sciences
Member, American Society of Questioned
Document Examiners
Member, Southwestern Association of Forensic
Document Examiners*

*Testimony in State and Federal Courts
Listed in Marquis' Who's Who*

# Automotive Expert Consultant

- Did a negligent repair contribute to personal injury?

- Did the brakes really fail?

- Was the repair done correctly?

- Why did the tire come off?



**Ken Neal**
MASTER TECHNICIAN

## 480-464-8846
AZMOBILEAUTOREPAIR.COM/WITNESS.HTM



THE TRIAL REPORTER          June 15, 2003
*****************************************

6/11/03 - Judge MARY H. MURGUIA -
CV 01-0554 - PHX-MHM - LEACH (John A.
Michaels of Beale, Michaels & Slack, P.C.) v
NATIONAL UNION FIRE INSURANCE (Megan
E. Irwin of Mariscal, Weeks, McIntyre &
Friedlander, P.A.) - BREACH OF CONTRACT
- FIRST PARTY BAD FAITH BY AN INSUR-
ANCE PROVIDER.   Decedent, male, age 41,
was survived by his spouse; one adult child, age
21; and two minor children, ages 4 and 6.
Decedent, operating a motorcycle, died from
injuries sustained in an accident, caused by an
uninsured motorist.  Decedent's employer, Giant
Industries, provided Decedent with a company
vehicle, and insurance coverage, as a benefit of
his employment.  Pintfs filed a claim with Dfnt,
for uninsured motorists' coverage, under the
insurance  policy  provided  by  Decedent's
employer, which was denied.   Pintfs alleged
Dfnt breached the contract, and was guilty of
bad faith.   Dfnt denied liability, advancing the
defense that no coverage existed.   Dfnt argued
Decedent was not in the course and scope of his
occupational duties, at the time of the accident.
Dfnt also argued Decedent did not have permis-
sion,   nor   did   he   have   a   reasonable
belief that he had permission, to ride the motor-
cycle.   Prayer: Just and reasonable compensatory
damages (P).   MATTER SETTLED BEFORE
TRIAL FOR $750,000.
*****************************************

You can make Thousands of calls to find one Expert...        ...Or make one call to find Thousands of Experts.



**The Trial Reporter**

# United States District Court Jury Trials

THE TRIAL REPORTER of Central and Northern Arizona   November 30, 2003

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

10/24/03 - Judge STEPHEN M. McNAMEE - CV 01-00329 - SMM-PHX - MILLER (Stephen A. U'Ren, a sole practitioner) v AMERICAN FAMILY MUTUAL INSURANCE COMPANY (James D. Nolan and Robert K. Lewis of Mariano & Allen, P.L.C.) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING. *Prologue: Plntfs, husband and wife, experienced a water leak, under the concrete foundation slab of their home, which ultimately caused the slab to crack and uplift. At the time of the leak, Plntf husband's parents resided in the home, and paid monthly rent to Plntfs. Plntfs reported the leak to Dfnt, their homeowner's policy carrier, and repairs began in May, 2000. Repairs were completed in January, 2001.* Plntfs alleged Dfnt was guilty of bad faith, when it unreasonably delayed repair of the rental house, when it unreasonably delayed payment for the amount of rent lost while the home was uninhabitable, when it failed to pay the full amount of the lost rent, and when it claimed Plntfs committed fraud in presenting their lost rent claim, seeking to void any further coverage under the policy. Plntfs also alleged Dfnt breached the contract, when it failed to pay the full amount of the lost rent. Plntfs argued that, although Dfnt had paid $3,400 in lost rent, they were entitled to receive the fair rental value, under the terms of the contract, rather than the amount of the actual rent lost. Plntfs called Frederick C. Berry, Jr., J.D., C.P.C.U., an attorney and insurance expert; and Ronald A. Starling, P.E., a structural engineer. Dfnt denied liability, advancing the defense that it handled Plntfs' claims reasonably. Dfnt alleged that any delay in starting repairs on the home was a result of the nature of the damage, and expert opinions regarding how and when to repair the damage. Dfnt also alleged Plntfs' lost rent claim presented a fairly debatable issue, that entitled Dfnt to investigate the claim, and any delay was the result of the investigation, Plntfs' untimely response to requests for documentation, and inadvertence or mistake. Additionally, Dfnt alleged that, even though it agreed to pay the lost rent it deemed was supported by evidence, Plntfs submitted false documents and/or information to support their lost rent claim. Dfnt alleged Plntfs committed fraud, under the terms of the contract, and that fraud voids any further coverage under the policy. Dfnt argued its determination of the amount of lost rent owed to Plntfs was reasonable, and based on documentation submitted by Plntfs. Dfnt also argued it paid the fair rental value, under the terms of the policy, and did not breach the contract. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Eight day trial. Jury out 7 hours, over a two-day period. AWARDED PLNTFS $145,000 COMPENSATORY DAMAGES, ON THEIR CLAIM OF BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; AND AWARDED PLNTFS $3,800 COMPENSATORY DAMAGES, ON THEIR CLAIM OF BREACH OF CONTRACT.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11/17/03 - Visiting Judge OWEN M. PANNER - CV 95-01787 PHX-OMP - JINRO AMERICA, INC.; and JR INTERNATIONAL CORPORATION (Kevin C. Barrett and Kurt M. Zitzer of Meager & Geer, P.L.L.P.) v BISHOP dba LANDMARK FORWARDING, INC.; BRIAN W. BISHOP CORPORATION dba COBBI INTERNATIONAL FOOD PRODUCTS; and WATKINS dba SECURE INVESTMENTS (pro

Case 2:14-cv-02474-DJH   Document 1-1   Filed 11/07/14   Page 33 of 72

THE TRIAL REPORTER of Central and Northern Arizona                    November 30, 2001
**********************************************************************************************

DAMAGES, AWARDED PLNTFS ZESTRIJAN $215,000 COMPENSATORY DAMAGES, AND AWARDED PLNTFS PASULA $130,000 COMPENSATORY DAMAGES, ON THEIR CLAIMS OF BREACH OF IMPLIED WARRANTY, BAD FAITH, NEGLIGENCE, NEGLIGENT MISREPRESENTATION, AND INTENTIONAL MISREPRESENTATION. UNANIMOUSLY.

*****************************************************

11/26/01 - Judge COLLEEN A. McNALLY - CV 2000-006713 - HATLEY, et al (Steven A. Gruenemeier, a sole practitioner; and Steven C. Dawson of Dawson & Rosenthal, P.C.) v CENTURY NATIONAL INSURANCE COMPANY (Steven P. Kramer and Douglas L. Christian of Christian & Mariano, P.L.C.) - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER - HOMEOWNER'S COVERAGE - TOXIC TORT - MOLD. *Prologue: Plntf father, age 28, a builder and installer of wood shutters, Plntf mother, age 28, a student, employed part-time delivering flowers for a florist, Plntf mother's son, Thomas, age 7, and Plntfs mother and father's son, James, age 2, had homeowner's insurance coverage with Dfnt. Plntfs discovered water damage and mold, from leaking dishwasher and a broken pipe, inside bathroom wall, after Plntf son Thomas, who has cystic fibrosis, was hospitalized, and found to have levels of the mold (aspergillus) in his lungs. Plntfs filed claim with Dfnt, for water damage and mold. Plntfs' claim for remediation and additional living expenses was denied by Dfnt, on the grounds that losses caused by mold are excluded, under Plntfs' standard homeowner's policy. Dfnt questioned the Arizona Department of Insurance's opinion that its policy covered mold. Independent adjustor and public adjustor both advised Dfnt that mold, caused by covered water damage, was not excluded under the policy. Dfnt also argued that one of the water leaks preexisted the policy. Subsequently, Dfnt offered to extend coverage, and pay for all remediation, in exchange for a voluntary cancel-*lation of the policy, and release of all causes of action, including personal injury and bad faith claims. Plntfs then filed suit. Six weeks later, Dfnt unconditionally extended coverage, and paid Plntfs' remediation costs and living expenses. Kitchen cabinets were removed, as were carpets, drywall, and studs from the walls between the two bathrooms and in the kitchen. Based on pretrial rulings, emotional injuries and punitive damages went to the jury.* Plntfs called James Faas, an industrial hygienist and mold remediation expert, who testified he found mold in the kitchen and the wall between the two bathrooms, and drew up a protocol for remediation. Thereafter, Dfnt paid $72,000 for repairs and living expenses. Plntf also called Thomas L. Carter, C.P.C.U., an insurance claims expert, who testified Dfnt's conduct was egregious, and Dfnt was guilty of bad faith. Dfnt agreed the bathroom mold was caused by covered water damage, and was not excluded, although its claims personnel initially believed the mold exclusion applied. Dfnt called Gene Irizarry, an insurance claims adjustor, who was of the opinion Dfnt was not guilty of bad faith, and its misapplication of the mold exclusion was based on a good faith belief that the exclusion applied. Plntf son Thomas required medical treatment for his asthma, and the sequelae of the aspergillus mold inhalation. Plntf son Thomas called Gregory J. Legris, M.D., a pediatric pulmonologist, who testified regarding Plntf son's condition and treatment. Plntf son Thomas was not allowed to return to the home, and lived with his grandparents, until Plntfs received additional living expenses from Dfnt. Plntf family was out of their home for a total of nine months, before the dispute and remediation were resolved. Plntf mother alleged she was subjected to insult and abuse by Dfnt's employees, sustained emotional distress and worry over Plntf son Thomas' health, and sought compensatory damages. *Prayer:* Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntfs made a pretrial demand of

# RPC

**Research & Planning Consultants, LP**

Since 1972, RPC has provided consulting and litigation support to a national clientele. Our staff includes economists, accountants, attorneys, MBAs, financial analysts, statisticians, physicians, nurses and vocational consultants. We have the information technology to build and analyze large data and document basis in complex litigation.

**RPC PROVIDES LITIGATION SUPPORT IN EMPLOYMENT COMMERCIAL, ENVIRONMENTAL, HEALTH CARE AND PERSONAL INJURY CASES**

Visit our web site at
www.rpcconsulting.com
or contact us at
1-800-580-4567
*Offices in Austin, Dallas and Tampa*



**Sometimes half a loaf is not enough. We want to hear from both sides in a Jury Trial**

*Please give us your input.*

## The Trial Reporter

**THE TRIAL REPORTER**   November 30, 2001
*************************************************

$3 million - Dfnt offered $725,000 (P Dawson & Gruenemeier & D Kramer).  During closing arguments, Plntfs' counsel asked jury to award Plntfs a fair and reasonable amount for Plntfs' emotional distress, plus a meaningful punitive damage award, given Dfnt's conduct and financial status.  Defense counsel argued liability, and suggested, if jury found for Plntfs, they should award Plntfs a modest award.  Ten day trial.  Jury out six hours, over a two-day period.  AWARDED PLNTF FATHER $7,320 COMPENSATORY DAMAGES, AWARDED PLNTF MOTHER $207,400 COMPENSATORY DAMAGES, AWARDED PLNTF SON THOMAS $24,400 COMPENSATORY DAMAGES, AWARDED PLNTF SON JAMES $4,880 COMPENSATORY DAMAGES, AND AWARDED PLNTFS $4 MILLION PUNITIVE DAMAGES.  UNANIMOUSLY.
*************************************************

11/27/01 - Judge ROGER W. KAUFMAN - CV 99-18057 - ALLSTATE INSURANCE COMPANY (Bryan N. Sandler of Swenson, Storer, Andrews & Frazelle, P.C.) v D.S. RENTCO, INC., dba SABAN'S (Matthew K. Lavelle of Lavelle & Lavelle, P.L.C.) - SUBROGATION.  *Case being tried on Dfnt's appeal of Plntf's $5,205 arbitration award.*  Case being tried as a Shortrial.  Plntf alleged Chavez rented a vehicle from Dfnt, and was the permissive user of the vehicle, at the time of the accident.  Dfnt denied Chavez rented the vehicle, and the vehicle operated by Chavez was stolen.  Plntf sought to recover uninsured motorists' payment and property damage to its insured's vehicle, caused by Chavez.  Prayer: $5,765.31 stipulated compensatory damages (P). (Dfnt self-insured.)  One day trial.  By stipulation, four jurors deliberated.  Jury out thirty-five minutes.  FOUND CHAVEZ TO BE PERMISSIVE USER OF THE RENTED VEHICLE, AND AWARDED PLNTF $5,765.31 COMPENSATORY DAMAGES.  UNANIMOUSLY.
*************************************************

2/16/96 - Judge FRANK T. GALATI - CV 93-17081 - DAVISON (Richard Bellah of Bellah and Harrian) v VITALE (Steven D. Smith of O'Connor, Cavanagh, Anderson, Killingsworth & Beshears) - PERSONAL INJURY - INTERSECTION - CONTROLLED - TRAFFIC SIGNAL - LEFT TURN. *This trial actually ended February 8, 1996, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to conform to our citation system. Case being tried on Dfnt's appeal of Plntf's $24,424.64 arbitration award.* Case also being tried on comparative fault. Plntf, female, age 45, employed as a Mesa Justice Court clerk, alleged coming Dfnt failed to yield the right of way and executed a left turn into Plntf's path, causing collision. Dfnt, female, age 70, retired, argued comparative fault, advancing the defense that Plntf was inattentive and failed to keep a proper lookout. Plntf alleged she sustained cervical, thoracic, and lumbar soft tissue injuries; plus an aggravation of an injury she had sustained in a prior accident and from which she had just recovered. Plntf called Del J. Droste, D.C., who was of the opinion that Plntf's complaints were causally related. Plntf also called Mark V. Gregg, D.C., who testified that Plntf required further treatment, after Dr. Droste's treatment. Dfnt called Ronald M. Lampert, M.D., an orthopod, who was of the opinion that Plntf's injury, if any, was temporary, and that a reasonable period of treatment would have been two to three months, followed by exercise. It was also Dr. Lampert's opinion that Dr. Droste's use of a Metrecon machine and surface EMG was not acceptable or necessary. Prayer: Just and reasonable compensatory damages; plus $9,725.64 medical expenses. Plntf made a pretrial demand of $18,000 - Dfnt made a $14,000 offer of judgment, and later made a $15,000 informal offer (D). (Carrier: State Farm Insurance.) During closing arguments, Plntf's counsel argued Dfnt was one hundred percent at fault, and asked jury

to award Plntf her specials, plus $20,000. Defense counsel argued Plntf was partially at fault, and her medical treatment was excessive. Four day trial. Jury out six hours. AWARDED PLNTF $8,070.64 COMPENSATORY DAMAGES. UNANIMOUSLY. (Found Plntf to be thirty-five percent at fault and Dfnt to be sixty-five percent at fault; therefore, Plntf's award to be reduced to $5,245.92.)

*************************************************

2/16/96 - Judge CHERYL K. HENDRIX - CV 93-05652 - ZILISCH (Steven C. Dawson of Dawson & Rosenthal; and Calvin C. Thur of Thur & O'Sullivan, P.C.) v STATE FARM INSURANCE (Ralph E. Hunsaker and Frank M. Fox of O'Connor, Cavanagh, Anderson, Killingsworth & Beshears) - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. Plntf, female, age 23, an accountant, was passenger in a vehicle which was broadsided by a dragracing teenager. Plntf's finance was killed in the accident and Plntf sustained serious injuries. Plntf settled for $145,000 with liability carrier and submitted an underinsured motorists claim for policy limits of $100,000 to Dfnt in 1991. Dfnt offered Plntf $55,000 in settlement of her underinsured motorists claim in November of 1992. Dfnt conveyed a message to Plntf's attorney that Plntf would have to reduce her demand for policy limits before Dfnt would increase its offer. In February of 1993, a three-member arbitration panel ruled that the full value of Plntf's injuries was $387,500. Dfnt then issued its policy limits of $100,000 to Plntf. Plntf alleged Dfnt unreasonably delayed the processing of her claim, and made only a "low ball" offer, forcing Plntf to go through the time-consuming and expensive arbitration process, in order to obtain her policy limits. Plntf introduced documents and used the testimony of three insurance adjusters, formerly employed by Dfnt, who testified that Dfnt applies pressure to members of its claims department to reduce the average amount paid on claims, and that Dfnt

improperly made "profit" the major concern of its claims department. Plntf called Stephen D. Prator, an attorney of Santa Clara, California, who testified Dfnt knowingly attempted to underpay Plntf's claim, and breached its duty of good faith and fair dealing. Dfnt denied liability, advancing the defense that evaluating personal injury claims is a subjective practice, and alleged its evaluation of Plntf's claim was reasonable and in good faith, irrespective of the arbitration panel's finding. Dfnt also argued that the delay in settling Plntf's claim was caused by Plntf's attorney's failure to supply Dfnt with certain doctors' reports in a timely fashion. Dfnt called Tony Schrader, an attorney of Austin, Texas, testified that Dfnt's evaluation and offer were reasonable and in good faith, and that the delay was the fault of Plntf's attorney. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntf made a pretrial demand of $1.5 million - Dfnt offered $500,000 (P Dawson). During closing arguments Plntf's counsel asked jury to award Plntf a just and reasonable amount for Plntf's emotional distress, plus a substantial seven-figure amount in punitive damages. Defense counsel argued Dfnt acted in good faith. Eleven day trial. By stipulation, twelve jurors deliberated. Jury out five hours. AWARDED NTF $460,000 COMPENSATORY DAMAGES, PLUS $540,000 PUNITIVE DAMAGES. UNANIMOUSLY.

*******************************************

2/16/96 - Judge ALAN S. KAMIN - CV 95-02457 - TIRRELL (Jack A. Ettinger of the Law Offices of Ettinger & Ettinger; and Ernest W. Knutzen, a sole practitioner) v ARIZONA PACIFIC AIRLINES (Robert L. Greer of Kern and Wooley) - PERSONAL INJURY - AIRCRAFT MISHAP - EMERGENCY EVACUATION. *This trial actually ended February 15, 1995, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to*

*conform to our citation system.* Plntf, male, age 42, employed as a salesman, was passenger on Dfnt airline when a fire erupted in the engine of the aircraft, necessitating an emergency evacuation. Plntf alleged Dfnt was negligent in the installation of the engine. Dfnt admitted negligence. Plntf, who had a prosthetic left leg, sustained a fractured left hip, and a fractured right ankle. Plntf called Howard H. Johnston, M.D., an orthopod, who testified that Plntf will require periodic hip replacements during his life. Dfnt called Jon D. Zoltan, M.D. an orthopod. Prayer: Just and reasonable compensatory damages; $42,000 medical expenses; $25,000 to $30,000 future medical expenses for each hip replacement; $30,000 lost wages; plus an unspecified amount for future lost wages during recovery after each hip replacement. Plntf made a pretrial demand of $500,000 - Dfnt offered $150,000 (P). (Carrier: Unknown.) During closing arguments Plntf's counsel asked jury to award Plntf $720,000. Defense counsel suggested $98,000 was adequate compensation. Three day trial. Jury out three hours. AWARDED PLNTF $550,000 COMPENSATORY DAMAGES. 7 - 1.

*******************************************

2/16/96 - Judge PAUL A. KATZ - CV 93-13022 - GASTELO (Urcinio C. Salaiz, a sole practitioner) v ARVESON (Penny Taylor Moore of Cohen, McGovern, Shorall & Stevens, P.C.) - - PERSONAL INJURY - PEDESTRIAN/ AUTO MISHAP. *This trial actually ended February 8, 1996, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to conform to our citation system.* Plntf, female, age 28, employed by a dry cleaning company, alleged that, as she crossed Shea Boulevard, she was struck by Dfnt's vehicle. Dfnt, male, age 29, a self-employed exterminator, denied liability, advancing the defense that Plntf darted into traffic and was not in a crosswalk. Plntf sustained a fractured tibia and fibula, which

**************************************

12/20/90 - Judge BOLTON - 89-18918 - ARFA (Amy G. Langerman and JoJene E. Mills) v AETNA CASUALTY & SURETY (Thomas P. McGovern and Paul S. Ruderman) - FIRST PARTY BAD FAITH BY AN INSURANCE CARRIER. *Parties had agreed that the results of the one day, two hour, summary jury trial would be sealed. In error, Court included the results of the summary jury verdict in a minute entry, thus making it public record. Plntf's counsel Langerman filed a request for an emergency restraining order and sealing of records, and a motion for an accelerated ruling to prevent THE TRIAL REPORTER from publishing information contained in the minute entry.*

**************************************

12/20/90 - Judge FRANKS - 89-16395 - CAPRIOLA (Steven C. Dawson and Calvin C. Thur) v SAFECO CORPORATION (Ralph E. Hunsaker and Frank M. Fox) - FIRST PARTY BAD FAITH BY AN INSURANCE CARRIER. Plntf, owner of Tijuana Joe's Restaurant, which had been open for five to six weeks, had a standard B12 policy issued by Dfnt. Fire occurred in November of 1988, and Dfnt failed and refused to pay Plntf's claim, on the grounds that the fire was arson and that Plntf was responsible for the fire. Dfnt based its rejection of the claim on a Glendale Fire Department report which concluded the fire was arson. Dfnt called Thomas J. Pugh, a fire investigator, who testified that the fire occurred when a five gallon propane tank, with a partially open valve, was placed in a dishwasher room which contained a hot water heater, and a dripping hot water faucet. It was Mr. Pugh's opinion that the dripping hot water faucet caused the water heater to ignite, thereby causing ignition. It was also Mr. Pugh's opinion that the flame from the propane tank, after it was ignited, was ten to fourteen inches long. Plntf admitted that he was at the restaurant at 2:00 A.M. the night of the fire. Dfnt argued Plntf had a financial motive to set the fire. Plntf filed suit in June of 1989. Plntf called Gary Fye, a cause and origin expert and an insurance claims handler; and Frank Roberts, a certified chemist and physicist, specializing in explosions, who testified that the fire was not a propane fire, that the valve on the propane tank was closed, and that there could be no direct ignition without serious burns to the perpetrator. In the alternate, it was Misters Fye's and Roberts' opinion that it was not a delayed ignition

## PARALEGAL SERVICE

## Rushton-Kingsbury, Ltd.

### MONICA RUSHTON

*A Quality Paralegal Service Specializing in Civil Litigation*

3104 East Camelback Road
Suite 332
Phoenix, Arizona 85016

**(602) 955-3403**

*Garrett*

FORENSIC ENGINEERS

### When you need to know what really happened...

Over 250 experts providing comprehensive reconstruction and engineering services.

- Accident reconstruction
- Product failure analysis
- Structure claims analysis
- Fire cause determination
- Video/graphic capabilities
- Nationwide service

**Arizona Office:** 3443 N. Central Avenue, #609E
Phoenix, AZ 85012
(602) 266-2087

**Nevada Office:** P.O. Box 3000, Suite 401,
Parumph, NV 89041
(702) 727-6662

Offices also in Los Angeles, San Francisco, San Diego, Denver and Arlington, TX

Call Toll Free (800) 229-3647   FAX (213) 388-2660

INJURY EVALUATION SOLUTIONS ...   The Trial Reporter

because there would have been a tremendous explosion. Misters Fye and Roberts video taped a re-creation of the fire with the valve of the propane tank open in which the gas ignited, showing a twelve to fifteen foot long flame. Dfnt called a Glendale Fire Department investigator who testified that the fire was arson. Plntf alleged that he lost his restaurant, was unable to reopen the business, and sought policy limits on the property damage, on business interruption, and on computer equipment, for a total of $540,000. Prayer: Just and reasonable general damages: plus just and reasonable punitive damages. No pretrial negotiations (D Dawson). Four week trial. Jury out six-plus hours. AWARDED PLNTF $540,000 GENERAL DAMAGES ON THE ISSUE OF BREACH OF CONTRACT; FOUND DFNT BREACHED ITS DUTY OF GOOD ...TH AND FAIR DEALING AND AWARDED ...TF $460,000 GENERAL DAMAGES; AND AWARDED PLNTF $1.5 MILLION PUNITIVE DAMAGES. VERDICTS NOT UNANIMOUS.

*******************************************

12/20/90 - pro tem Judge HAROLD A. FREDERICK - 89-29227 - McINTOSH (Ferris W. Bellamak) v SEARS, ROEBUCK & COMPANY (John A. Michaels and Susan I. McLellan) - PERSONAL INJURY - PREMISES LIABILITY - BUSINESS INVITEE - TRIP AND FALL. Plntf, in her mid-thirties, stepped onto a demonstration treadmill at Dfnt store and, in so doing, fell. Dfnt denied liability, advancing the defense that the treadmill was not, in and of itself, dangerous. Plntf sustained cervical and ... strains and sprains, plus a sprain of the knee. Plntf called Frederick A. Schofield, D.C. Prayer: Just and reasonable compensatory damages: $3,000 medical expenses: plus $1,800 lost wages. Plntf made a pretrial demand of $10,000 - Dfnt offered $5,000 (D Michaels). (Dfnt self-insured.) Three day trial. Jury out one-plus hours. FOUND FOR DFNT. 6 - 2.

*******************************************

12/20/90 - Judge HUTT - 87-38187 - LEWIS (William D. Piatt, IV, and J. Scott Conlon) v RYDER TRUCK and MARSHALL (E. Jeffrey Walsh and Lisa M. Coulter) - PERSONAL INJURY. Case tried on comparative liability. Plntf, male, age 20, in the military reserves, had just finished training as a heavy equipment operator, and was employed part-time as a janitor and in sales. Plntf and Dfnt Marshall were both travelling in the same direction. Plntf

alleged that, as he was lane changing diagonally, speeding Dfnt Marshall, operating Dfnt Ryder's truck, overtook him and struck Plntf's vehicle. Plntf alleged that he could have lane changed safely, but for Dfnt Marshall's speed. Plntf called Lamont L. Skousen, an accident reconstructionist, to support his position. Dfnt Marshall, in his forties, self-employed in service transport, denied liability, advancing the defense that Plntf made an unsafe lane change without looking. Dfnts argued comparative liability. The bumper of Dfnts' truck impaled the driver's door of Plntf's Volkswagen Rabbit. Plntf sustained a severe fracture of the femur of the left leg, necessitating implantation of rods and screws; a skull fracture and brain contusion; was comatose twenty-one days, resulting in some short term memory loss; plus multiple fractures of the jaw, with residuals of clicking and numbness in the chin. Plntf used the deposition of his treating physicians at Maricopa County Medical Center, who are now either retired or out-of-state. DIRECTED VERDICT FOR DFNT RYDER TRUCK AT THE CLOSE OF PLNTF'S CASE. Prayer: Just and reasonable compensatory damages; $72,000 in medical expenses (kept out by Judge on grounds that there was no sponsorship by a medical witness). Plntf made a pretrial demand of $175,000 - Dfnts offered $125,000 (P). (Dfnt Ryder Truck self-insured.) Six day trial. Jury out one hour. AWARDED PLNTF $17,000 COMPENSATORY DAMAGES. UNANIMOUSLY. (Found Plntf to be eighty-eight percent at fault and Dfnt Marshall to be twelve percent at fault; therefore, Plntf's award to be reduced to $2,040.)

*******************************************

12/20/90 - pro tem Judge GEORGE F. RANDOLPH - 88-19704 - CITY OF PHOENIX (Michael A. Graham) v CHAVES (Leslie A. McCarthy) - CONDEMNATION. Property, one and one-quarter acre in size, located at the southwest corner of 22nd Street and Buckeye Road, to be taken for the Sky Harbor Center Redevelopment. Property contained a "park and shuttle" facility, and had improvements of lights, fencing, asphalt paving, and a trailer. Plntf called Paul G. Johnson, M.A.I., C.R.E., a real estate appraiser, who testified that just compensation for the property taken is $410,000, and that just compensation for the improvements is $50,000. Parties stipulated that the highest and best use of the property was as a "park and shuttle" facility. Dfnt called Robert L. Blake, a real estate appraiser, who

************************************************************

gist, specializing in pain control, who concurred with Dr. Davis, and was of the opinion Plntf is left with a thirty-five percent permanent impairment of the right lower extremity, per American Medical Association guidelines. During the pendency of the case, Plntf and her husband were divorced, as a result of her injury. Dfnt planned to call Floyd S. Anderson, M.D., a neurosurgeon, who disagreed with the diagnosis, but agreed on the cause of Plntf's pain syndrome and her treatment plan. Directed verdict, for Plntf on the issue of contributory fault. Prayer: Just and reasonable compensatory damages; $18,406.68 past medical expenses; $475,060 future medical expenses; plus $1,800 wages. Plntf made a $450,000 pretrial er of judgment Dfnt refused to make an offer (P Nelson & D). (Dfnt self-insured.) During closing arguments, Plntf's counsel asked jury to award Plntf $994,726.68. Defense counsel argued liability, and, in the alternate, suggested $60,000 to $80,000 was adequate compensation. Five day trial. By stipulation, nine jurors deliberated. Jury out three hours. AWARDED PLNTF $450,000 COMPENSATORY DAMAGES. 7 - 2. (Plntf filing motion for attorney's fees, as sanction for Dfnt's appeal of the arbitration award.)

************************************************************

..8/01 - Judge KENNETH LEE - CV 335067 - GREAT SOUTHWEST TRADING COMPANY (Joseph W. Watkins; and Evan L. Thompson, both sole practitioners) v TIG INSURANCE (Douglas E. Thomas of Mower, Koeller, Nebeker, Carlson & Haluck, L.L.P.) - TORT - BAD FAITH - FIRST PARTY - INSURANCE PROVIDER. Plntf, an estate resale business, had four auto/contents related theft claims, and filed claim with Dfnt, its carrier. Plntf alleged Dfnt failed to perform any investigation of the claims, over a two-year period. Plntf called John Partlow, specializing in insurance practices and procedures, who testified Dfnt was guilty of bad faith. Dfnt argued Plntf failed to file

adequately documented claims. Dfnt's experts were stricken for late disclosure. Plntf sought $146,000. Prayer: $146,000 compensatory damages, and just and reasonable punitive damages. Plntf made a pretrial demand of $125,000 - Dfnt offered $72,000 (P Watkins). (Dfnt self-insured.) During closing arguments, Plntf's counsel argued Dfnt had financial incentives to delay payment of the claims. Defense counsel argued Plntf failed to prove its case. Four day trial. Jury out four-plus hours. AWARDED PLNTF $122,000 COMPENSATORY DAMAGES, AND AWARDED PLNTF $350,000 PUNITIVE DAMAGES. 7 - 1.

************************************************************

## Announcements

************************************************************

The law firm of QUARLES & BRADY STREICH LANG, L.L.P., is pleased to announce that MICHAEL OWEN MILLER has joined the firm, located at One South Church Avenue, Suite 1700, Tucson, Arizona 85701. Telephone number: (520) 770-8700. Facsimile: (520) 623-2418.

**PLEASE LET US KNOW**

If your firm name changes or if you add a new associate.

**NEWS OF THE PROFFESSION**

Is of interest to our readers and we print it free of charge.

You may notify us of any changes affecting your firm by calling:

### The Trial Reporter

(602) 276-7773 Phoenix
(520) 885-7773 Tucson
(702) 385-7773 Las Vegas
(775) 853-7773 Reno
(602) 276-5133 Fax
(800) 266-3131 Toll Free Fax

# Addendum & Erratum

THE TRIAL REPORTER of Central and Northern Arizona

**********************************************************************************

October 31, 1997

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the October 15, 1997, issue of* THE TRIAL REPORTER *of Central and Northern Arizona.*

10/1/97 - Judge COLIN F. CAMPBELL - CV 94-11479 - RUBINOFF (Margaret F. Dean and Carolina L. Carver of Muchmore & Wallwork, P.C.) v CIGNA HEATHPLAN OF ARIZONA, INC. (Jeffrey J. Campbell of Mitten, Edwin & Raup, P.C.) - WRONGFUL DEATH - MEDICAL MALPRACTICE. *This trial actually ended September 23, 1997, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to conform to our citation system.* Decedent, female, age 46, who had coverage through Dfnt, an HMO, was survived by her husband and two adult children, who brought suit for her wrongful death. Plntfs alleged Decedent had classic symptoms of the reoccurrence of cervical cancer, which Dfnt's physician failed to timely diagnose. Plntfs argued the delay decreased Decedent's chance of survival. Plntfs called William M. Meller, M.D., an internist, of Santa Barbara, California, who opined Dfnt fell below the medical standard of care. Plntfs also called Joanne B. Stern, J.D., an attorney, of Whittier, California, who testified Dfnt fell below the standard of care, for an insurance provider. Additionally, Plntfs called Barry L. Singer, M.D., an internist, specializing in oncology, of Norristown, Pennsylvania, on the issue of causation. Dfnt admitted the delay in diagnosis, but argued it was not negligent for failing to discover the reoccurrence. Dfnt called Daniel Field, M.D., of California, on the standard of care. Dfnt also called Leo Smith, M.D., an oncologist, of California, on causation.

Additionally, Plntfs alleged Dfnt was guilty of <u>bad faith</u>, when it failed to provide certain medical benefits, such as a motorscooter, due under the insurance contract. Prayer: Just and reasonable compensatory damages. Plntfs made a pretrial demand of $600,000 - Dfnt offered $100,000 (P Dean). Ten day trial. Jury out two-plus hours. AWARDED PLNTFS $125,000 COMPENSATORY DAMAGES FOR BREACH OF GOOD FAITH AND FAIR DEALING. UNANIMOUSLY. FOUND FOR DFNT ON PLNTFS' CLAIM OF MEDICAL NEGLIGENCE. 6 - 2. AFTER VERDICT, JUDGE GRANTED PLNTFS' EARLIER MOTION FOR MISTRIAL ON THE MEDICAL MALPRACTICE CLAIM.

**********************************************

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the October 15, 1997 issue of* THE TRIAL REPORTER *of Central and Northern Arizona.*

10/1/97 - Judge LINDA K. SCOTT - CV 97-91862 - RUSSELL (Neal G. Horenstein, a sole practitioner) v SYLVESTER (pro se) - FORCIBLE DETAINER. *This trial actually ended September 18, 1997, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to conform to our citation system.* Plntf landlord sought to terminate Dfnt's lease of premises, which had two months left in its term, alleging Dfnt was not properly maintaining the premises. Dfnt alleged premises were properly maintained. Prayer: Grant Plntf possession of premises (P). One day trial. Jury out ? hours. FOUND FOR DFNT.

**********************************************

# 𝕾𝖊𝖙𝖙𝖑𝖊𝖉 𝕭𝖊𝖋𝖔𝖗𝖊 𝕿𝖗𝖎𝖆𝖑

THE TRIAL REPORTER of Southern Arizona                    July 15, 1995
**********************************************************************************

7/11/95 - Judge WILLIAM H. TINNEY - CV 275406 - ANDERS (Bernard I. Rabinovitz of Rabinovitz & Associates, P.C.) v STATE FARM INSURANCE (Lawrence A. Peshkin of Peshkin & Kotalik, P.C.) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER - FAILURE TO PAY UNINSURED MOTORISTS BENEFITS. Plntfs, husband and wife, and their child, were involved in an automobile accident with a DUI uninsured motorist, in 1987. Underlying coverage paid $300,000 policy limits in 1988. Plntfs' treatment and medical expenses continued, and, in 1989, Plntfs filed claim under their umbrella policy, issued by Dfnt. Dfnt made no offer, although Plntfs alleged Dfnt's adjustor requested authority to settle the claim for $300,000. Plntfs planned to call Nestor R. Roos, D.B.A., a risk management expert, who was of the opinion that Dfnt was guilty of bad faith and breach of contract when it failed to make a timely offer of settlement. It was also Mr. Roos' opinion that Dfnt's adjustor was guilty of bad faith when he requested the underlying carrier to delay payment to Plntfs. Dfnt argued a prior arbitration hearing resulted in an award of $20,000 less than the underlying coverage and, therefore, Dfnt did not breach the contract and was not guilty of bad faith when it refused to make Plntfs an offer of settlement. Dfnt planned to call J. Michael Low, an attorney and former director of the Arizona Department of Insurance, who supported Dfnt's position. Plntf husband sustained a cervical strain and sprain, allegedly resulting in brain damage, and has a severe post-traumatic stress disorder. Plntf husband planned to call Jerry R. Day, Ph.D., a psychologist; and Ronald S. David, M.D., a psychiatrist. Plntf wife required breast implant surgery, after the tissues of her breast were avulsed by the seat belt. Plntf wife

also sustained cervical and lumbar herniated disks, a rotator cuff tear, temporomandibular joint dysfunction, and a severe aggravation of her preexistent psychological condition. Plntf wife planned to call Richard A. Silver, M.D., an orthopod; Larry F. Wheeler, D.D.S.; and Lisa R. Strober, M.D., a psychiatrist. Dfnt planned to call Steven Harkins, D.D.S., who was of the opinion that Plntf wife's temporomandibular joint dysfunction was unrelated. Dfnt also planned to call Lydia Artiola, Ph.D., a neuropsychologist; and Steven Gurgevich, Ph.D., a psychologist, both of whom were of the opinion that Plntf husband's medical complaints were unrelated to Plntfs' claim of bad faith. Prayer: $1 million compensatory damages (P). MATTER SETTLED BEFORE TRIAL FOR $700,000.

**********************************************************************************

## Lorna Gale Cheifetz, Psy.D.
### Licensed-Clinical & Forensic Psychologist

- Psychological Evaluations & Psychotherapy
- Plaintiff or Defense - Personal Injury Cases
- Disability Evaluations, Including Independent Medical Examinations
- Post-Traumatic Stress Disorder Evaluations
- All Aspects of Criminal and Domestic Relations Cases, Including Assessment of Children

Maricopa County Bar Association
Psychologist of the Year - 1987
15 Years Experience

**2211 East Highland Avenue, Suite 135**
**Phoenix, Arizona 85016-4833**
**(602) 381-1277**
**FAX: (602) 381-1470**

NEED A FORENSIC EXPERT IN A SPECIFIC FIELD? . . . The Trial Reporter

THE TRIAL REPORTER of Southern Arizona

*************************************************************************

July 31, 1990

build the twenty miles of aqueduct, denied agreeing that a performance bond was not required, and argued that Plntf would have lost $1 million if he had taken the job at a $4.2 million bid. Plntf called Alfred Heimpel, a contractor and construction expert. Dfnt called G. Thomas "Tom" Henderson, a construction expert and contractor of Seattle, Washington, who testified that Plntf underbid the contract. Prayer: $740,000 lost profits. Plntf made a pretrial demand of $200,000 to $300,000 - Dfnt made a $50,000 offer of judgment (D). Four day trial. Jury out one hour. FOUND FOR DFNT. 7 - 1.

*********************************************

7/19/90 - Judge ROBERT B. BUCHANAN - 260208 - BERGMAN (Roger O'Sullivan) and CALVERT (Barry Kirschner) v FARMERS INSURANCE (Marshall Humphrey, III) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH. Plntfs, male and female, cohabitated in a residence which they owned, which was insured by Dfnt. A fire occurred and Plntfs' filed a claim with Dfnt. Dfnt denied the claim, on the grounds that fire was caused by arson. Dfnt called David M. Smith, C.F.I., a fire investigator, who testified that the fire was caused by arson, based on multiple points of origin. Plntfs argued that Plntf Bergman and Dfnt's fire investigator, Smith, knew each other for one year prior to the fire and were not on friendly terms. Plntf Bergman alleged that he advised Dfnt of the unfriendliness which existed, but that Dfnt chose to keep Smith on he case, even in light of the unfriendliness. Plntfs called Gary Fye, a fire investigator, who testified that the fire was electrical in nature. Plntfs also called the City of Tucson's fire investigator, Lawrence "Larry" Smith, who testified that the fire was most probably electrical. Dfnt called Robert E. Nabours, Ph.D., P.E., an electrical engineer, who testified that the fire was not electrical. Plntfs also called the City of Tucson's police arson investigator who testified that the fire was not caused by arson. Plntfs alleged that Dfnt paid off the first mortgage on the residence, but never advised Plntfs it had done so and, therefore, Plntfs did not fight foreclosure proceedings filed by the second mortgage holder and, as a result, ultimately lost their home. Additionally, Plntfs alleged that their personal property was placed in storage and that Dfnt failed and refused to pay the storage fees. Plntfs alleged they had $30,000 equity in the $75,000 home, and

sought $51,400 in contents and living expenses. Dfnt denied acting in bad faith, alleging that it had a debatable claim. Prayer: Just and reasonable general damages; plus just and reasonable punitive damages. Plntfs made a pretrial demand of $425,000 to $450,000 - Dfnt refused to make an offer (P O'Sullivan). Seven day trial. Jury out two hous. AWARDED PLNTFS $51,400 ON THE ISSUE OF BREACH OF CONTRACT AND AWARDED EACH PLNTF $150,000 GENERAL DAMAGES PLUS $500,000 PUNITIVE DAMAGES. UNANIMOUSLY.

*********************************************

7/19/90 - Judge J. RICHARD HANNAH - 254595 - O'NEAL (David W. Rees) v BRANSON (John F. Haas) - PERSONAL INJURY - REAREND. Plntf, male, age 35, an unemployed heavy equipment operator, alleged that, as he stopped at a T-intersection to execute a left turn, he was rearended by Dfnt. Dfnt, female, age 18, unemployed, admitted liability. Plntf sustained residuals of a bulging disk at L-5, S-1. Plntf planned to call Nicholas A. Ransom, M.D., orthopod, who first saw Plntf seventeen months post-accident, and who was prepared to testify that Plntf's bulging disk was related by history. According to Dr. Ransom's report, it was his opinion that Plntf faces possible or probable surgery, but before surgery is performed, a myelogram or MRI should be performed. It was also Dr. Ransom's opinion that Plntf is no longer able to perform the occupational duties of a heavy equipment operator. Dfnt planned to call Dennis L. Thrasher, M.D., specializing in family practice, Plntf's initial treating physician, who was prepared to testify that Plntf's cervical and lumbar strains and sprains had resolved. Dfnt also planned to use the deposition of Robert P. Goldfarb, M.D., a neurosurgeon, who concurred that Plntf has a bulging disk and is unable to perform his occupational duties. Prayer: Just and reasonable compensatory damages: $1,800 medical expenses; an unknown amount for future medical expenses; plus a claim for impaired earning capacity (P & D). (Carrier: Allstate.) DURING THE SECOND DAY OF TRIAL, AFTER PLNTF'S TREATING PHYSICIAN DID NOT APPEAR AS SCHEDULED, A MISTRIAL WAS DECLARED. JURY EXCUSED.

*********************************************

**USE YOUR TRIAL REPORTER INDEX!**

# Settled Before Trial

THE TRIAL REPORTER of Central and Northern Arizona                April 30, 1994

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

2/11/94 - Judge EDWARD C. RAPP - CV 93-13482 - MORENO (John C. Crookham of Solomon, Relihan & Blake, P.C.) and RUST, wife (Scott A. McKay of Weyl, Guyer, MacBan & Olson, P.A.) v RUST, husband (E. Calvin Fuchs of Gallagher & Kennedy) - PERSONAL INJURY - INTERSECTION - CONTROLLED - STOP SIGN. Plntf Robert Moreno, male, was passenger in a van operated by Plntf Carlos Moreno, traveling fifty-five miles per hour, southbound on Loop 303 at the intersection of Indian School Road, when Dfnt husband Rust, operating vehicle with passenger, Plntf wife Rust, traveling fifty miles per hour, failed to stop at a stop sign and collided with Plntf Carlos Moreno's van. Impact caused van to slide several hundred feet into a field, where its gas tank ruptured and van burst into flames. Plntf wife Rust sustained multiple fractures and internal injuries, requiring intensive care and long-term hospitalization. Plntf Robert Moreno sustained severe burns over fifteen percent of his body, resulting in significant scarring. Plntf Carlos Moreno sustained a fractured arm. Plntf Robert Moreno's Prayer: Just and reasonable compensatory damages; in excess of $115,000 medical expenses; plus $8,250 lost wages. Plntf Carlos Moreno's Prayer: Just and reasonable compensatory damages; plus an unstated amount for medical expenses. Plntf wife Rust's Prayer: Just and reasonable compensatory damages; plus $287,000 medical expenses (P McKay). (Dfnt husband Rust's Carrier: CNA Insurance.) MATTER SETTLED BEFORE TRIAL FOR POLICY LIMITS OF $2 MILLION. PLNTFS AGREED TO DIVIDE THE SETTLEMENT AS FOLLOWS: PLNTF ROBERT MORENO TO RECEIVE $1,225,000 AND PLNTF WIFE RUST TO RECEIVE $775,000. ATTORNEYS FOR PLNTFS MORENO AND PLNTF WIFE RUST AGREED TO PAY $7,500 EACH TOWARD A TOTAL $15,000 SETTLEMENT ON BEHALF OF PLNTF CARLOS MORENO.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

4/25/94 - Judge ROBERT L. GOTTSFIELD - CV 92-14680 - BECK (Matthew B. Cunningham [L.C.] and James P. Cunningham of The Law Offices of James P. Cunningham) v AMERICAN TRAVELERS LIFE INSURANCE COMPANY, INC. (S. David Childers, Steven R. Henry, and John P. Lynn of Low & Childers) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY INSURANCE PROVIDER. Plntfs, husband and wife, purchased a home health care insurance policy from World Life. Plntfs alleged that, at the time they purchased the policy, agent informed them that the home care policy provided coverage for Plntf husband's Parkinson's Disease. Plntf also alleged that they reasonably expected and believed that the policy covered any and all conditions relative to Parkinson's Disease. Subsequently, Dfnt purchased a "block" of insurance from World Life, including Plntfs' policy. Pursuant to the Purchase and Sale Agreement, Dfnt assumed all liability that World Life owed to Plntfs under the policy. Plntfs alleged Dfnt breached the contract and was guilty of bad faith when Dfnt denied Plntf husband's claim. Dfnt asserted that Plntf husband's claim was denied on the basis that Plntfs waived coverage for any and all conditions relative to Parkinson's Disease. Dfnt produced a "waiver" document with Plntf husband's purported signature on it. Plntfs planned to call William J. Flynn, D-ABFDE, a questioned documents examiner, who was prepared to testify that the signature on the "waiver" document was more than likely a forgery. Plntfs also planned to call Lester Tenney, Ph.D., an insurance expert, who



**Jacqueline Kurth, MA,CRC,CCM,Manager**
**David White, RN,BSN,MA,CCM,Supervisor**
**Denise Maier, RN,BSN,CCM**
**Lawrence Mayer, MC,MS**
**Julie Lindstrom, RN,BS,CCM**

Expert Witness Services

* LEC's
* Labor Market Analysis
* Job Analysis
* Vocational Testing
* Medical File Assessments
* Life Care Planning
* Medical Care Coordination
* File Review
* Testimony

GENEX offers:

* Vocational Experts
* Medical Experts
* Statewide Services
* Bi-lingual Capabilities
* Experienced Professionals

722 EAST OSBORN ROAD, SUITE 310, PHOENIX, AZ 85014
(602) 265-8025  FAX (602) 274-2491

THE TRIAL REPORTER          April 30, 1994

was prepared to testify that the conduct of both World Life and Dfnt, the successor in interest, fell below the standard of care for an insurance provider in the underwriting and processing of Plntf husband's claim. It was also Dr. Tenney's opinion that Dfnt's conduct constituted bad faith. Prayer: Just and reasonable compensatory damages (P Matthew B. Cunningham). TWO DAYS AFTER A SETTLEMENT CONFERENCE, BEFORE PRO TEM JUDGE J. THOMAS BROOKS, PLNTFS AND DFNT ENTERED INTO A SETTLEMENT AGREEMENT FOR $206,668, PLUS REINSTATEMENT OF PLNTFS' POLICY, WITHOUT ANY WAIVERS OR EXCLUSIONS FOR PARKINSON'S DISEASE. (VALUE OF THE REINSTATED INSURANCE BENEFITS IS APPROXIMATELY $100,000, BASED ON PLNTF HUSBAND'S LIFE EXPECTANCY.)



# COURTROOM GRAPHICS

## Graphics for the Legal Professional

* Accident Scene Diagrams
* Hand Lettered Panels
* Illustrations
* Charts and Graphs
* Models / Displays
* Photography
* Computer Graphics
* Marketing / Advertising



Designs Un•Ltd.

Sam Samalik & Associates

(602) 279-0406



Keep abreast of All the Superior Court Civil Jury Trial Cases tried in Arizona with The Trial Reporter

# News of Other Counties

## - MARICOPA COUNTY -

THE TRIAL REPORTER of Southern Arizona

June 15, 1997

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

5/2/97 - Judge THOMAS DUNEVANT, III - CV 94-20715 - MONACELLI (Steven A. Dawson and Anita Rosenthal of Dawson & Rosenthal) v GEM INSURANCE COMPANY (Leslie A. Kresin and Brian M. Mueller of Mariscal, Weeks, McIntyre & Friedlander, P.A.) and DAVIS (Peter C. Kelly, II, of Holloway Egard & Sweeney, P.C.) - BREACH OF GOOD FAITH AND FAIR DEALING BY AN INSURANCE CARRIER - MISREPRESENTATION - NEGLIGENCE.   Case being tried on comparative fault.  Plntf husband, age 66, and Plntf wife, age 45, owners of A Touch of Yogurt shop, purchased health insurance from Dfnt Gem Insurance Company, in an effort to reduce their premiums.  Insurance agent, Dfnt Davis, age 42, sold policy to Plntfs, and completed the application for insurance.  Plntfs alleged that Dfnt Davis never advised them that, by purchasing new health insurance, they would be triggering a new two-year contestability period a new preexisting condition exclusionary period.  Plntfs alleged Dfnt Davis noted, on the application, that Plntf husband had had a physical examination the month before, but that he left blank the column asking for details. Plntfs alleged that Dfnt Davis advised them that the testing done, during the physical, did not need to be disclosed, as Dfnt insurance company would obtain the medical records of Plntf husband's recent physical exam.  Several weeks later, Plntfs were notified that Dfnt insurance company had accepted their application, and Plntfs surrendered their existing policy.  Seven months later, Plntf husband was diagnosed with lung cancer.  Upon receipt of claims for medical expenses, Dfnt insurance company began a post-claim underwriting investigation, during which it requested medical records of prior physical

examinations.  Dfnt insurance company rescinded Plntfs' insurance policy, and left Plntfs with $68,000 in unpaid medical expenses.   Further, Dfnt insurance company's cancellation left Plntf husband uninsurable.   Plntfs alleged that they advised Dfnt insurance company of Dfnt Davis' statements, and their treating physician also wrote Dfnt insurance company explaining that Plntf husband was in good health, at the time of the physical, and the chest x-ray taken, during the physical, upon which Dfnt insurance company was basing its recision, only revealed a scar, consistent with an old infection, and that comparisons of x-rays proved that the scar had no relationship to Plntf husband's later diagnosis of cancer.   Plntfs called three other policyholders of Dfnt insurance company, who had been similarly treated.  Plntfs argued that Dfnt insurance company had a pattern and practice of conducting improper post-claim underwriting. Plntfs called Barbara J. Paull, M.B.A., an insurance claims expert, who opined that Dfnt insurance company unreasonably rescinded the policy and denied Plntfs' claims, by engaging in the practice of post-claim underwriting.  Plntfs also called Albert E. Moriondo, FALU, FLMI, an insurance underwriting expert, who opined that any reasonably prudent underwriter would obtain the medical records of a recent physical on a sixty-three-year-old applicant, and, by not doing so, Dfnt insurance company made the decision that nothing in the records was material. Dfnt insurance company argued that it properly underwrote the application, prior to its acceptance, and that Plntfs committed legal fraud, by failing to note, on the application, that Plntf husband had received testing, during his physical examination.  Just days before the initial trial day, in August, 1996, Dfnt insurance

THE TRIAL REPORTER of Southern Arizona
*********************************************************************************
June 15, 1997

company paid all Plntfs' medical expenses, and argued that the fault lay with Dfnt Davis. Dfnt Davis argued Plntfs were comparatively at fault, for not adequately completing and double checking their insurance application. Dfnt Davis also argued that his acts did not cause Plntfs damages. Prayer: Just and reasonable compensatory and punitive damages. Plntfs made a pretrial demand of $1.2 million (per P Dawson) - Dfnts offered $25,000 (per P Dawson) or Dfnt Davis offered $35,000 (per D Kelly) (P Dawson & D Kelly). (Dfnt Gem self-insured; Dfnt Davis' Carrier: Fireman's Fund Insurance.) Twelve day trial. By stipulation, nine jurors liberated. Jury out eight-plus hours over a two-day period. FOUND FOR DFNT DAVIS ON PLNTFS' PUNITIVE DAMAGES CLAIM. 8 - 1. AWARDED PLNTFS $1 MILLION COMPENSATORY DAMAGES. 7 - 2. AWARDED PLNTFS $15 MILLION PUNITIVE DAMAGES. 8 - 1. (Found Plntfs to be zero percent at fault, Dfnt Davis to be three percent at fault, and Dfnt insurance company to be ninety-seven percent at fault; therefore, Plntfs to recover $30,000 compensatory damages from Dfnt Davis, $970,000 compensatory damages from Dfnt insurance company, and $14,550,000 punitive damages from Dfnt insurance company.)
*********************************************

5/16/97 - Judge ROGER W. KAUFMAN - CV 94-16181 - LOTHRIDGE and WILLIAMS (Mark W. Kennedy, a sole practitioner) v KECENOVICI and SOUTHWEST TRANSPORTATION (J. Gordon Cook and Diane L. Mihalsky of Renaud, Cook & Drury, P.A.); and CONTINENTAL TIRE and YOKOHAMA (Michael L. McAllister of the Law Office of Michael L. McAllister, LTD.) - PERSONAL INJURY - TRUCKING MISHAP - PRODUCT LIABILITY - TIRE. *This trial actually ended May 9, 1997, but did not come to light until after our publication deadline. Therefore, we have changed the trial's ending date to conform to our citation system.* Case being tried on comparative fault. Plntf Lothridge, female, age 30, a licensed practical nurse, was operating vehicle with passenger, Plntf Williams, male, age 26, a corrections officer with the Arizona Department of Corrections. Plntfs alleged Dfnt Kecenovici, in the course and scope of his occupational duties for Dfnt Southwest Transportation, was negligent, when he failed to control his tractor/trailer, after a routine disablement of his left front steering axle tire. Plntfs alleged Dfnt Southwest Transportation was negligent in its hiring and retaining of Dfnt Kecenovici, whose driving record should have disqualified him. Plntfs alleged Dfnt Kecenovici had a history of accidents, and had lied on his application for employment. Plntf Lothridge called David Stopper, a trucking expert and accident reconstructionist, who testified regarding the proper method for controlling a tractor/trailer with tire problems, and the standard of care under Federal law, as well as industry standards for hiring and retaining commercial drivers. Plntf Williams called James Eaves, an accident reconstructionist, who testified Dfnt Kecenovici was travelling seventy-eight miles per hour, approximately seven hundred feet before impact. Dfnt trucking company denied liability, advancing the defense that the tire was defectively manufactured, and its failure caused Dfnt Kecenovici to lose control of the tractor/trailer. Dfnt trucking company called H. Richard Baumgardner, a tire expert, who testified the tire had a manufacturing defect. Dfnt trucking company also called Robert L. Anderson, M.S., P.E., a biomechanical engineer, who testified regarding the drag force generated by the flopping tread and belt piece. Dfnt trucking company also called Lowell Hicks, M.S., an accident reconstructionist, who opined that Plntf Lothridge should have been able to avoid colliding with the tractor/trailer. Dfnt tire company called an inhouse engineer who testified the tire was disabled, as a result of a puncture, and had no manufacturing or design defect. DIRECTED VERDICT FOR DFNT TIRE COMPANY AT

# United States Bankruptcy Court Trials

## - PHOENIX DISTRICT -

THE TRIAL REPORTER of Central and Northern Arizona

February 15, 1999

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1/26/99 - Judge GEORGE B. NIELSEN, JR. - CV B-96-04779 PHX-GBN/CV 97-605 GBN - AUDIO PRAXIS ENTERPRISE, INC., dba PHASE FOUR STUDIOS and HARRIS (Charles F. Richards, Jr., Carolyn R. Tatkin, and Allan D. Newdelman, all sole practitioners) v FIREMAN'S FUND INSURANCE COMPANY (Steven A. Adelman of Jones, Skelton & Huli, P.L.C.) - BREACH OF CONTRACT - FIRST PARTY <u>BAD FAITH</u> BY AN INSURANCE PROVIDER - AGGRAVATED AND OUTRAGEOUS CONDUCT. Plntf Harris, owner and operator of Plntf Audio Praxis Enterprise, a recording studio, alleged a business insurance theft loss occurred, in May of 1997, which Dfnt denied, in July of 1997, on the grounds Plntf Harris was the thief. Plntfs also alleged that, when Dfnt subsequently decided to honor the claim, in November of 1997, it computed an unreasonable co-insurance penalty, using an incomprehensible provision, whereby Dfnt only paid approximately twenty percent of claim. Plntfs called Timothy R. Smock, J.D., of Smock and Weinberger, P.C., who testified Dfnt denied the claim, without admissible evidence to support its position that Plntf Harris was the thief. It was Mr. Smock's opinion Dfnt unreasonably denied the claim, rather than continuing to investigate. It was also Mr. Smock's opinion Dfnt's co-insurance provision was not comprehensible, was unenforceable, and Dfnt was guilty of bad faith. Plntfs also called Buddy Brando, owner of a sound recording equipment studio, who opined the values Dfnt used in computing its co-insurance penalty were unreasonably high, and Plntfs' equipment values were reasonable. Dfnt denied liability, advancing the defense that it acted in good faith, and its co-insurance provision was valid and enforceable. Dfnt called S. David Childers, J.D., of Low & Childers, P.C., who supported Dfnt's position. Plntf Harris alleged he sustained $20,000 per month in lost income. Dfnt called Kevin J. Reed, C.P.A., who testified Plntf Audio Praxis Enterprise showed an average income of only $10,000 per month, in the twelve months prior to the insurance loss by theft of the equipment. Prayer: Just and reasonable compensatory damages; just and reasonable punitive damages; plus $406,864.93 in unpaid insurance benefits. Plntfs made a pretrial demand of $3 million - Dfnt offered $200,000 (P Richards). During closing arguments, Plntfs' counsel asked for $4,700,000 in compensatory and punitive damages. Defense counsel argued Dfnt was not guilty of bad faith. Nine day trial. COURT RULED PLNTFS TO TAKE JUDGMENT IN THE AMOUNT OF $1 MILLION, ON PLNTFS' CLAIMS OF BREACH OF CONTRACT, FIRST PARTY BAD FAITH, AND AGGRAVATED AND OUTRAGEOUS CONDUCT; PLUS REASONABLE ATTORNEY'S COSTS. (Court also ruled award not to be reduced by $150,000 in insurance payments made by Dfnt.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



*The Trial Reporter*
the

to
*Statewide
Civil Jury
Verdict Information*

result. Plntf had returned to work without restriction. Prayer: Just and reasonable compensatory damages; plus $27,000 lost wages. Plntf made a pretrial demand of $75,000 (per P) or $70,000 (per D) - Dfnt offered $40,000 (per P) or $45,000 (per D) (P & D). (Dfnt self-insured.) DURING JURY SELECTION, ON FIRST DAY OF TRIAL, MATTER SETTLED FOR $57,500.

**************************************************

4/1/99 - Judge STEPHEN C. VILLARREAL - CV 318562 - BARAJAS (Linda S. Sherrill of Carter Morey, P.C.) v DAVIS (E. Hardy Smith of Chandler, Tullar, Udall & Redhair) - PERSONAL INJURY - REAREND. Plntf, in twenties, a warehouseman, was rear-ended by Dfnt. Dfnt, female, admitted liability. Plntf alleged he sustained a herniated lumbar disk at L-4, L-5, which could only be treated conservatively. Plntf planned to call his treating physicians: Joseph C. Mirabile, M.D., a neurosurgeon; Anne E. Kristensen, M.D., an internist; Michael J. Glynn, M.D., a neurologist; Timothy K. Putty, M.D., a neurologist; and Sheldon E. Gingerich, M.D., specializing in pain control. Prayer: Just and reasonable compensatory damages; $8,507 medical expenses; plus $8,407.88 lost wages (P). (Carrier: Allstate Insurance.) MATTER SETTLED BEFORE TRIAL FOR $25,000.

**************************************************

4/13/99 - Judge NANETTE M. WARNER - CV 316503 - FOLEY TILE (William H. Douglas of Douglas & Cox) v FREMONT COMPENSATION INSURANCE (Donald L. Myles, Jr., of Jones, Skelton & Hochuli, P.L.C.) - BREACH OF CONTRACT - BAD FAITH BY INSURANCE PROVIDER. Plntf purchased Worker's Compensation policy, which had a provision for dividends, from Dfnt. Plntf alleged that, after policy period, Dfnt indicated it was issuing a $63,000 dividend check. Further, Plntf alleged, months later, Dfnt advised

Plntf it would not pay the dividends because Plntf had made late premium payments. Plntf alleged all premiums had been accepted by Dfnt and the policy was never cancelled. Plntf planned to call James Loeb, an insurance practices expert, who was prepared to testify Dfnt's conduct constituted bad faith. Dfnt argued that, since several premium payments were late, they were not obligated to pay the dividends. (Prior Judge Alfred granted Plntf's motion for summary judgment on the breach of contract claim.) Dfnt denied its conduct was wilful or wanton. Dfnt planned to call S. David Childers, J.D., an insurance expert, to support its position. Prayer: $63,000 general damages; $12,000 retention; plus just and reasonable punitive damages for evil conduct. Plntf made a pretrial demand of $500,000 - Dfnt refused to make an offer (P). (Dfnt self-insured.) MATTER SETTLED, DURING JURY SELECTION, FOR $300,000.

**************************************************

NO NATIONAL STATISTICS
OVERVIEWS
GENERALIZATIONS

JUST ACCURATE INFORMATION ABOUT LOCAL JURY VERDICTS

The Trial Reporter

No Other Publication Can Make This Claim!

became symptomatic, and according to MRI studies and CT scans, Plntf had significant degenerative changes, in his low back, and was a candidate for future surgery. In the interim, Dr. Dzioba's opined Plntf would require conservative treatment, including physical therapy, injections, and modification in employment, because of the progression of his arthritis. Dfnt called Colin R. Bamford, M.D., a neurologist, who opined the diagnostic studies did not reflect significant changes in Plntf's preexistent arthritis. It was Dr. Bamford's opinion Plntf has a full range of motion, in the lumbar spine, with only a slight limitation in his neck. It was also Dr. Bamford's opinion Plntf ____ed soft tissue injuries, which should have resolved in six months to two years post-accident. Prayer: Just and reasonable compensatory damages; plus $11,300.22 medical expenses. Plntf made a pretrial demand of $60,000 - Dfnt offered $15,000 (P) (P & D Goering). (Carrier: Farmers Insurance.) Three day trial. Jury out one hour. AWARDED PLNTF $12,000 COMPENSATORY DAMAGES. UNANIMOUSLY.

*********************************************

7/11/97 - Judge KENNETH LEE - CV 302461 - WHITE (Garry B. Bryant, a sole practitioner) - ____ LAND RISK INSURANCE COMPANY (Richard A. Segal of Gust Rosenfeld, P.L.C.) - FIRST PARTY BAD FAITH - UNINSURED MOTORIST'S COVERAGE DISPUTE. Plntf, female, was insured by Dfnt. After being involved in an accident, with an uninsured motorist, Plntf filed claim with Dfnt. *Claim went to arbitration before John L. Tully, John A. Gravina, and Philip H. Grant. William A. Udall represented Dfnt at the arbitration hearing.* Plntf alleged the attorney who represented Dfnt during the arbitration hearing had ex parte communication with the arbitrator selected by Dfnt, and advised the arbitrator of all details of the settlement negotiations. Plntf also alleged that, as a result, arbitrator selected by Dfnt,

acted as an advocate, for Dfnt. Plntf called Gary T. Fye, an insurance claims and industry standards expert. Additionally, Plntf called John L. Tully, J.D. Dfnt argued delay in processing claim was not intentional, and insurance policy did not expressly prohibit ex parte communication. Additionally, Dfnt argued arbitrator was not acting as an advocate. Dfnt called John O'Connell, Ph.D., C.P.C.U., A.R.M., A.A.I. Dfnt also planned to call J. Tyrrell Taber, J.D., but did not do so. Plntf alleged that, as a result of Dfnt's bad faith, she lost the ability to recover anything on her underlying uninsured motorist claim. Prayer: Just and reasonable compensatory damages. Plntf made a pretrial demand of $375,000 (per P) or $300 million (per D). Dfnt offered $100,000 before trial, and $200,000 during trial. Four day trial. Jury out ? hours. AWARDED PLNTF $2,580,837.50 COMPENSATORY DAMAGES. UNANIMOUSLY.

*********************************************

**E. DWAYNE TATALOVICH**

**SECURITY EXPERT**

Former Chairman of Tatt Companies International, Arizona's largest security company for over a decade, twenty-six years experience

*-Specializing in-*

• Premises liability
• Foreseeability issues
• Sexual assault
• False arrest
• Security misconduct
• Use of force
• Guard company liability
• Electronic systems failures

**TATALOVICH & ASSOCIATES**

3002 N. Third Street
Phoenix, Arizona 85012-3002
(602) 264-0007

ance.)   Three day trial.   Jury out one hour. AWARDED PLNTF $42,600 COMPENSATORY DAMAGES.   UNANIMOUSLY.   (Plntf's award to be reduced to $28,497.75, after application of fault for failure to wear a seat belt.)

********************************************************

9/4/98 - Judge STEVEN D. SHELDON - CV 96-08860 - BOESE (Peter Michael Salcido, a sole practitioner) v ALLIED EAGLE TOOL, KELLY, and ENGINUITY (Paul A. Conant of Galbut & Conant, P.C.) - TORT - CONSUMER FRAUD.   Case being tried as a shortrial.   Plntf purchased partial ownership in Dfnt Allied Eagle Tool, for $124,000.   Plntf alleged Dfnt Kelly made false representations to induce Plntf to ase partial ownership.   Plntf sought rescis-sion and/or damages.   Dfnt Kelly denied making false representations.   Dfnts counterclaimed for damages.   Prayer: Just and reasonable compensa-tory damages (P).   Three day trial.   By stipula-tion, four jurors deliberated.   Jury out four hours.   FOUND FOR DFNT ENGINUITY; FOUND FOR PLNTF ON DFNTS' COUNTER-CLAIM;   AWARDED PLNTF   $18,204 COMPENSATORY DAMAGES, AGAINST DFNTS ALLIED EAGLE TOOL AND KELLY.

********************************************************

9/8/98   -   Judge   JOHN   FOREMAN   -
-06105 - OLSON (Calvin C. Thur of
Thur & O'Sullivan, P.C.; and Mike Jones of Bristow, Oklahoma) v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (Ralph E. Hunsaker of O'Connor, Cavanagh, Anderson, Killingsworth -& Beshears, P.A.) - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.   Plntf, female, was operating a new leased 1993 Cadillac Seville, which only had one thousand miles on it, at the time of the accident.   Plntf's vehicle was insured by Dfnt.   Plntf alleged that, early on, she signed a repair authorization, for $12,191.06, based on Dfnt's repair estimate.   Plntf also

alleged that, seven months later, when the repairs had been completed, Dfnt told her the cost of the repairs was only $21,926.18, when, in fact, the repair cost was $31,389, and attempted to induce Plntf to accept the vehicle. Additionally, Plntf alleged Dfnt never told her the repair cost was $31,389, nor that it would take seven months to repair the vehicle.   Plntf refused to accept the vehicle, arguing she believed the vehicle was unsafe, and did not want a vehicle that had been damaged to such an extent.   Plntf alleged that, when she refused to accept the vehicle, the leasing company repossessed it, then sold it at auction for $29,000, which was $2,000 less than the repair cost.   Leasing company then sued Plntf for the deficiency balance, in excess of $11,000, and reported her to the credit bureau, as being in default on her lease obligation.   (Leasing company's lawsuit still pending, and bad credit rating has been on Plntf's credit report for over three years.)   Plntf alleged Dfnt acted in bad faith, when it chose to repair her vehicle, rather than "totaling" it.   Plntf entered into evidence a letter, from Dfnt to a body shop association, which stated "We feel repair disagreements should be blind to the customer and should be negotiated at the estimator level on a case by case basis", in addition to a memo from the Assistant Vice President of Property Claims at Dfnt's home office, which stated "Transparent to the customer, procedures will be developed to transfer documents between the repairers and Dfnt, inspect repair work as necessary and monitor bottom line program results."   Plntf alleged Dfnt included some remanufactured parts in its repair estimate, and the parts were previously damaged parts from another vehicle, which had been straightened or repaired, and then installed on Plntf's vehicle.   Plntf also presented evidence of another claim, in which Dfnt's policyholder wanted his vehicle totaled, but Dfnt elected to repair it.   Dfnt's policy-holder's vehicle was in the repair shop for five years, and was not still not completely repaired.

Additionally, Plntf presented evidence Dfnt set goals for its estimators, which encouraged them to reduce claim payments, by using high percentages of salvage parts from junkyards, which Dfnt calls "like, kind and quality" parts. Jury was shown Dfnt's training manual, in which its Vice President of Claims stated its goal was to have the most profitable claims department in the industry, and claims profit was determined by taking the amount that should be paid on a claim, and deducting the amount that was actually paid. Plntf submitted evidence which reflected Dfnt had instituted contests or competition to see which estimators could use the most salvaged parts or appearance allowances. Plntf argued Dfnt-evidenced a pattern of unfair claims practices. Plntf called Gary DeRungs, a body shop manager, to support her position. Dfnt denied acting in bad faith, and argued it does not consider how long it will take to repair a vehicle, when making its decision whether to repair or total a policyholder's vehicle. Dfnt also argued seven months to repair Plntf's vehicle was not unreasonable. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntf made a pretrial demand of $1.6 million (per P Jones) or 1 million (per P Thur) - Dfnt offered $325,000 (P Jones & Thur). Eight day trial. Jury out six hours, over a two-day period. AWARDED PLNTF $1 MILLION COMPENSATORY DAMAGES, PLUS $5 MILLION PUNITIVE DAMAGES.  7- 1.
*************************************************************************************

9/9/98 - Judge JOHN FOREMAN - CV 97-13043 - KING (Richard C. Gramlich of Carmichael & Powell, P.C.) v JANOWITZ (Ridenour, Swenson, Cleere & Evans, P.C.) - PERSONAL INJURY - REAREND. *Case being tried on Dfnt's appeal of Plntf's $14,500 arbitration award.* Plntf, male, age 48, used automobile sales manager at Liberty Buick, alleged he was rear-ended by Dfnt. Dfnt, female, age 71, retired, admitted liability, but argued Plntf's

chiropractic expenses were unreasonable and unrelated. Plntf alleged he sustained cervical, thoracic, and lumbar strains and sprains. Plntf used the medical records of Douglas G. Bailes, D.O., a general practitioner, which indicated Plntf's complaints were causally related, and his treatment and physical therapy were reasonable and necessary. Plntf called William F. Covey, D.C., who testified his treatment, after Plntf received physical therapy, was reasonable and necessary. Dfnt used the medical report of Ronald M. Lampert, M.D., an orthopod, which stated Plntf's treatment, through physical therapy, was reasonable, but Plntf's chiropractic treatment was unreasonable and unnecessary. Prayer: Just and reasonable compensatory damages; plus $5,500 medical expenses (disputed). Plntf made a $13,999 offer of judgment - Dfnt made a $9,800 offer of judgment (P & D). (Carrier: Allstate Insurance.) During closing arguments Plntf's counsel asked jury to award Plntf his medical expenses, plus $12,000 for pain and suffering. Defense counsel suggested $2,000 (per P) or $3,571 for medical expenses, plus $2,000 for pain and suffering (per D), was adequate compensation. Two day trial. Jury out two-plus hours. AWARDED PLNTF $10,550 COMPENSATORY DAMAGES. UNANIMOUSLY.
*************************************************************************************

9/9/98 - Judge JOHN R. STICHT - CV 97-09502 - McDADE (Joe Saienni of Bill Stephens & Associates) v KORTMAN ELECTRIC, INC. (Jon D. Schneider of Jennings, Strouss & Salmon, P.L.C.); and D. L. WITHERS CONSTRUCTION, INC. (Brian Kaven of Burch & Cracchiolo, P.A.) - PERSONAL INJURY - CONSTRUCTION SITE MISHAP - SLIP AND FALL. Plntf, male, age 50, a painter for Pete King Construction, alleged that, while he was in the course and scope of his occupational duties, working at Cheyenne Elementary School, allegedly in an inadequately lit room, near the library, he slipped and fell on

# United States District Court Jury Trials

THE TRIAL REPORTER          January 15, 1995
**************************************************

12/20/94 - Judge ROGER G. STRAND - CV 89-1883 - AHRING (John Edwards Osborne [L.C.] and Page Chancellor Axen of Goldberg & Osborne) v TRUCK INSURANCE EXCHANGE/ FARMERS INSURANCE (Kevin B. Sweeney of Holloway, Odegard & Sweeney, P.C.) and STATE FARM MUTUAL INSURANCE (Steven Smith of O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears) - PERSONAL INJURY - DECLARATORY ACTION - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER - FRAUD. *Case tried in four stages. Same jury to hear all stages.* Plntf son, age 16, was operating a pickup truck with two minor Plntf siblings as passengers. Oncoming vehicle crossed center line and head-on collision occurred. All three Plntf children were injured in collision and made claims for their personal injuries. Plntf parents filed derivative claims for loss of consortium, in addition to fraud and first party bad faith claims. At issue was the owner-ship of the pickup truck (collision pickup), operated by Plntf son, which was involved in the accident. Plntfs alleged that the collision pickup truck was a "loaner" given to Plntf children's grandfather to use while Jim's Garage repaired his pickup truck. Collision pickup truck involved in the accident had been owned by Slade, who allegedly sold it to Jim's Garage, one and one-half months prior to the instant accident, to satisfy a debt. Jim's Garage, owned by Larry and Bob Rogers, alleged they took possession of the collision pickup truck with the agreement that they would attempt to sell the vehicle for Slade and apply the proceeds of the sale to Slade's debt. Later, Slade died. Slade's wife testified

## Jaburg & Wilk, P.C.

### Appellate Representation Assistance

- **Case and Issue Analysis**
- **Preparation of Appellate Briefs**
- **Oral Arguments**

*Contact Roger Cohen
Jaburg & Wilk, P.C.
3200 North Central Avenue
Suite 2000
Phoenix, AZ. 85012
(602) 248-1000
Fax: (602) 248-0522*



# THROW SOME LIGHT ON THE SUBJECT!!!

Find out what an expert has done previously.

ORDER A COMPENDIUM FROM:

# The Trial Reporter

that the vehicle was sold to Jim's Garage to satisfy the debt. At dispute was whether or not grandfather purchased the collision pickup truck when he inquired about the status of the repair to his pickup truck. Larry Rogers alleged grandfather agreed to purchase the collision pickup truck for $500 and alleged he agreed that grandfather could pay for the vehicle when he sold his calves. Subsequently, grandfather also died. Grandfather had $100,000 coverage with Dfnt State Farm Insurance, Jim's Garage had $300,000 coverage with Dfnt Truck Insurance, and Larry and Bob Rogers each, personally, had $300,000 coverage with Dfnt State Farm Insurance. Plntfs alleged Dfnt State Farm conspired with its agent and the owners of Jim's Garage to have senile grandfather say he purchased the collision pickup truck before the accident, when it was really a "loaner" vehicle to grandfather while his pickup truck was being repaired. Plntfs called Lydia Artiola, Ph.D., a neuro-psychologist, who testified that grandfather was in the mid to late stages of progressive dementia at the time of the alleged sale of the vehicle, the day before the instant accident. Dfnt State Farm argued that no fraudulent collusion occurred between the garage owners and Dfnt State Farm's agent, and that grandfather owned the collision pickup truck at the time of the accident. Plntf son sustained a serious head injury, was in a coma, also sustained massive injuries to his hip and leg, and now walks with a cane. Plntf son incurred $300,000 in medical expenses. Plntf son has no memory of the time immediately before the accident or the accident. Plntf male sibling passenger sustained internal injuries and incurred $30,000 in medical expenses. Plntf female sibling passenger sustained soft tissue injuries and kidney damage, incurring $4,000 in medical expenses. First stage of trial to determine ownership of the collision pickup truck lasted eight days. Jury out four hours. FOUND JIM'S GARAGE OWNED THE COLLISION PICKUP TRUCK AT THE TIME OF THE ACCIDENT. AT CLOSE OF FIRST STAGE



**GENEX**

Jacqueline Kurth, MA,CRC,CCM,Manager
David White, RN,BSN,MA,CCM,Supervisor
Denise Maier, RN,BSN,CCM
Lawrence Mayer, MC,MS
Julie Lindstrom, RN,BS,CCM

**Expert Witness Services**

* LEC's
* Labor Market Analysis
* Job Analysis
* Vocational Testing
* Medical File Assessments
* Life Care Planning
* Medical Care Coordination
* File Review
* Testimony

**GENEX offers:**

* Vocational Experts
* Medical Experts
* Statewide Services
* Bi-lingual Capabilities
* Experienced Professionals

722 EAST OSBORN ROAD, SUITE 310, PHOENIX, AZ 85014
(602) 265-8025  FAX (602) 274-2491

---

Win Cases with
# E.C.S. Consultants

Meticulously prepared cases
are

# "The First Step"
for
Med/Dent Negligence,
P.I. and Indust Med

**Full spectrum of services by experienced M.D.'s, Dentist's and IME's**

# Tel. (602) 661-1844
P.O. Box 1388
Scottsdale, AZ 85252-1388

THE TRIAL REPORTER of Central and Northern Arizona                    January 15, 1995
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

OF TRIAL, COURT DIRECTED A VERDICT FOR DFNT STATE FARM INSURANCE RULING THAT LARRY AND BOB ROGERS' PERSONAL COVERAGE DID NOT APPLY TO THE COLLISION VEHICLE.   Second stage of trial to determine applicable coverage.   Jury to determine whether Plntf son had his grandfather's express or implied permission to operate the collision pickup truck.   Plntfs argued that circumstantial evidence supported permissive use. Second stage of trial lasted two days.   Jury out three hours.   FOUND PERMISSIVE USE EXISTED.   (As a result of the verdict in the second stage, Dfnt Truck Insurance offered policy limits of $300,000, eliminating the need for the third stage UM arbitration.)   Trial proceeded to fourth stage to determine if Dfnt State Farm conspired with the owners of Jim's Garage to hide the truth about the ownership of the collision pickup truck, which caused direct loss to Plntfs through delay, including denial of $300,000 policy coverage with Dfnt Truck Insurance, breaching Dfnt State Farm's duty of good faith and fair dealing.   Dfnt State Farm argued that it had paid what it owed and was not guilty of bad faith.   DIRECTED VERDICT FOR DFNT STATE FARM ON THE ISSUE OF PUNITIVE DAMAGES (P Osborne & D Smith).   Fourth stage of trial lasted six days.   Jury out five hours.   AWARDED PLNTFS $910,000 COMPENSATORY DAMAGES FOR BREACH OF GOOD FAITH AND FAIR DEALING. (Trial lasted a total of six weeks.)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



# A Compendium can help you AVOID SURPRISES!

## Injury Evaluation . . .
## Forensic Experts . . .
## Analogous Cases . . .

CALL:

### The Trial Reporter

# United States District Court Jury Trials

THE TRIAL REPORTER of Central and Northern Arizona          February 29, 2000

**************************************************************************************

12/9/99 - Judge PAUL G. ROSENBLATT - CV 97-435 PHX-PGR - DILLON (Larry L. Debus and Mary E. Hyduk of Debus, Kazan & Westerhausen, Ltd.) v MARICOPA COUNTY SHERIFF'S DEPARTMENT (Daniel P. Struck of Jones, Skelton & Hochuli P.L.C.) - VIOLATION OF CIVIL RIGHTS ACT - EXCESSIVE FORCE. Plntf, in his thirties, a general contractor, alleged Dfnt's correction officers used excessive force, during Plntf's incarceration for orderly conduct. Plntf also alleged he was cuffed numerous times, and strapped into a restraint chair. Additionally, Plntf alleged he was unable to breathe, due to the restraints. Plntf called John G. Peters, Jr., a police practices and procedures expert, to support his position. Dfnt denied liability, advancing the defense that Plntf was disruptive to the jail, and required restraint. Dfnt called Gary W. Deland, a criminal justice expert, to support its position. Plntf alleged he sustained emotional distress. Prayer: Just and reasonable compensatory damages. Plntf made a pretrial demand of $155,000 - Dfnt offered $135,000 (P Hyduk). (Dfnt self-insured.) MATTER SETTLED BEFORE TRIAL FOR $135,000.

**************************************************************************************

1/14/00 - Judge STEPHEN M. McNAMEE - CV 97-2658 PHX-SMM - WINN and WILHITE (Randy L. Sassaman of Raymond Greer & Sassaman, P.C.) v AMERICAN BANKERS INSURANCE COMPANY (Timothy G. O'Neill and Gretchen N. Smith of Snell & Wilson, L.L.P.) - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. Decedent, female, age 34, was survived by her mother; father; daughter, age 16; and son, age 13. Decedent was a passenger in her own vehicle, operated by her boyfriend, when it was T-boned by a Maricopa County Sheriff's Office vehicle, while

on an emergency run. After initial impact, primary vehicles collided with two other vehicles, which were stopped at the intersection. Decedent's vehicle was insured by Dfnt. (Plntfs settled wrongful death claim, with Maricopa County, with a covenant not to disclose the amount.) In addition to the wrongful death claim, there were five other individuals who had potential personal injury claims against the insured driver (two MCSO officers, two occupants in one of the vehicles involved in the secondary collision, and the driver of the other vehicle involved in the secondary collision.) Plntfs alleged that, several months after the accident, Dfnt, acting through Cardinal Claims Service Representatives, indicated it would probably interplead its $15,000/$30,000 policy. Plntfs also alleged that no demands had been made against Dfnt's policy, and Dfnt had not investigated the nature and extent of the other potential claims. Additionally, Plntfs alleged the Interpleader Complaint was filed, without any prior attempt by Dfnt to settle the claims, or obtain agreements from all potential claimants that, if potential claimants could not agree on distribution of the policy limits, they would release the insured driver, in exchange for Dfnt's interpleading of policy limits. All interpleader Dfnts, with the exception of Plntfs, and two others, were defaulted. Interpleader Dfnts who appeared stipulated to distribution of the settlement proceeds, with $15,000 to be paid to Plntfs, and the remaining $15,000 to be split between the other two personal injury claimants. Plntfs alleged that, before the funds were paid to the Court, Dfnt offered to pay the limits to the parties. Plntfs refused to provide a complete release to the insured driver, advising Dfnt they were going to receive the policy limits in any event, and that, if Dfnt insisted upon release of the insured driver, Plntfs would proceed, by way

Case 2:14-cv-02474-DJH   Document 1-1   Filed 11/07/14   Page 56 of 72

THE TRIAL REPORTER of Central and Northern Arizona
**************************************************************************
February 29, 2000

of the interpleader action. Dfnt paid its policy limits, without obtaining a release of the insured driver from Plntfs. Plntfs then sued the insured driver, who was defended by Dfnt, and insured driver eventually entered into a Morris Agreement. Plntfs then sued Dfnt, on the grounds that Dfnt breached its obligation of good faith and fair dealing to the insured driver, by filing its Interpleader Complaint, without first attempting to obtain either an outright settlement, or promises from potential claimants to release the insured driver, in exchange for Dfnt's interpleading its policy limits. Plntfs alleged that, in over four-hundred pages of documents in claims files, there was no reference to interest of the insured driver, until Dfnt offered to pay the claimants directly. Plntfs also alleged that, on that day, for the first time, a release of the insured driver was requested. Additionally, Plntfs alleged that, by then, Dfnt had no leverage to obtain a release of its insured driver. Plntfs planned to call Leroy W. Hofman, J.D., of Hofman, Salcito & Stevens, who was prepared to testify an insurer's obligation of good faith and fair dealing includes the obligation to utilize available insurance funds to purchase as much protection as possible for the insured, and Dfnt breached its duty, when it its Interpleader Complaint, without first attempting to obtain settlements, or promises of release of the insured driver. Dfnt argued it was not guilty of bad faith, as a matter of law, since it paid its policy limits, and defended its insured. Dfnt also argued Plntfs' attorney "set up" the bad faith claim, and Dfnt did everything it could to protect the insured driver's interests. (Dfnt's Motion for Summary Judgment was denied.) Prayer: Just and reasonable compensatory damages (P).    MATTER SETTLED BEFORE TRIAL, DURING THE SECOND SESSION OF A SETTLEMENT CONFERENCE, BEFORE MAGISTRATE JUDGE LAWRENCE O. ANDERSON, FOR $250,000.
**************************************************

1/26/00 - Judge PAUL G. ROSENBLATT - CV 97-1274 PRESCOTT-PGR - COLLINS (Larry L. Debus and Mary E. Hyuk of Debus, Kazan & Westerhausen, Ltd.) v YAVAPAI COUNTY and FLUTEY (John T. Masterson of Jones, Skelton & Hochuli, P.L.C.) - WRONGFUL DEATH - VIOLATION OF CIVIL RIGHTS ACTS - EXCESSIVE FORCE - POLICE SHOOTING. Decedent, male, age 37, a drywall hanger, was survived by his parents, who brought suit for his wrongful death. Plntfs alleged Dfnt Flutey, in the course and scope of his occupational duties, as a Deputy Sheriff for Dfnt Yavapai County, shot decedent, at a distance of thirty to thirty-five feet, when decedent was not a threat to Dfnt Flutey. Plntfs planned to call John G. Peters, Jr., a police practices and procedures expert. Dfnts denied liability. Dfnts argued decedent had assaulted his girlfriend and her daughter, prior to Dfnt Flutey arriving on the scene. Dfnts also argued decedent had also struck a third party, with a two-by-four, and then wielded a pick ax, at Dfnt Flutey, just prior to being shot. Dfnts called Ronald M. McCarthy, a police practices and procedures expert, who was of the opinion the shooting was reasonable, under the circumstances. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntfs made a pretrial demand of $300,000 - Dfnts refused to make an offer (D). (Carrier: Arizona Counties Insurance Pool.) Six day trial. Jury out six-plus hours. JURY HUNG 5/3 FOR DFNTS; MISTRIAL DECLARED. JURY EXCUSED.
**************************************************

2/14/00 - Visiting Judge EDWARD RAFEEDIE - CV 95-1750 - PHX-EHC-ER - DUREL CORPORATION (Laurence H. Pretty of Pretty, Schroeder & Poplawski, P.C., of Los Angeles, California) v OSRAM SLYVANIA, INC. (Donald W. Bivens of Meyer, Hendricks & Bivens, P.A.) - TORT - PATENT INFRINGEMENT. Plntf, owner of the patents to powder

# Settled Before Trial

11/99 - Judge MICHAEL D. ALFRED - CV 311771 - BILLS (Stephen E. Kimble of Kimble, Lesher, Corradini & Toone, L.L.P.) v GUARANTEE FUND (D. Burr Udall of Chandler, Tullar, Udall & Redhair, L.L.P.) - FIRST PARTY - BAD FAITH OF AN INSURANCE PROVIDER. Details of the underlying case as follows: 4/21/95 - Judge GILBERT VELIZ - CV 299663 - BILLS (Stephen E. Kimble of Kimble & Morrison) v KTTL ENTERPRISES PACIFIC BEACH CLUB (M. Jay Felix of Felix & Holohan), and HOOTERS (Scott Goering of Goering, Roberts, Berkman, Rubin & Brogna, P.C.) - WRONGFUL DEATH - DRAM SHOP. Case tried on comparative fault. Decedent Bills, in his fifties, employed by Tucson Electric Power, was survived by his wife, age 57, a licensed practical nurse, who brought suit for his wrongful death. Decedent was killed in an accident, when struck by DUI Dfnt Teets, who was employed by Five Star Janitorial Service. (Five Star Janitorial had no insurance and was defaulted.) As an employee of Five Star, Teets and co-workers would clean various night clubs/ During the course of his duties, Plntfs alleged Teets often drank alcohol after closing hours. Plntfs also alleged that, on the evening in question, Teets consumed fourteen to sixteen drinks while cleaning Dfnt Hooters and Dfnt Pacific Beach Club. Teets had a blood alcohol level of .32, following the accident, which occurred while he was on his way to clean another bar. Plntfs alleged Dfnt Hooters violated its own policy that required all alcohol to be locked up, during the time the restaurant was closed. Teets' co-worker testified that the alcohol at Dfnt Hooters was never locked up, and that Teets had consumed alcohol there on occasions prior to the evening in question. Plntfs called Quentin Peterson, a criminalist and toxicologist, who testified regarding Teets' level

of intoxication. Dfnt Hooters' employees admitted that, if the taps were not locked off, this was a violation of Dfnt Hooters' policy, and also, a violation of Arizona law, in the event that Teets was able to consume alcohol from the beer taps. Dfnt Hooters argued that its policies requiring that liquor inventory be locked up, after hours, were designed not to prevent the intoxication of janitors, who were lawfully on the premises, but rather designed to "protect the product." Dfnt Hooters also argued that there was insufficient evidence as to the amount of alcohol Teets consumed at Dfnt Hooters and, therefore, Court should direct a verdict on the issue of proximate cause. Dfnt Pacific Beach Club argued it had no notice, nor reason to know that Teets was stealing liquor. Dfnt Pacific Beach Club also argued that it did not violate any laws and was not negligent. Plntf Bills, who had been married to decedent for twenty-two years, alleged that, following decedent's death, she was forced to quit her job as a licensed practical nurse, due to depression and suicidal ideation, and has undergone numerous psychiatric hospitalizations. Plntf Bills called Michael S. Kuntzelman, M.D., a psychiatrist, who testified regarding the psychological and emotional effects that decedent's death had on Plntf Bills. It was his opinion that, in all probability, Plntf Bills will require ongoing treatment and monitoring. DURING THE FOURTH DAY OF TRIAL, COURT DIRECTED A VERDICT FOR DFNT HOOTERS. Plntf Bills' Prayer: $1 million compensatory damages; $76,000 (per D Felix) or $58,000 (per D Goering) medical expenses; plus $1.2 million (per D Felix) or over $200,000 (per D Goering) past and future lost wages. Plntfs made a $1 million offer of judgment (per D Felix) or Plntfs made a pretrial demand of $50,000 from Dfnt Hooters (per D Goering) - Dfnt Hooters

THE TRIAL REPORTER of Southern Arizona                    November 30, 1999
************************************************************************************************

*offered $35,000. During trial, Plntfs offered to settle for $100,000 (D Felix & Goering). (Dfnt Hooters' Carrier: American International Group; Dfnt Pacific Beach Club's Carrier: Arizona Guaranty Fund.) During closing arguments Plntf Bills' counsel asked for $1.2 million. Defense counsel argued liability. Five day trial. Jury out two-plus hours. AWARDED PLNTF BILLS $2,650,000 COMPENSATORY DAMAGES. UNANIMOUSLY. (Found non-party Teets to be forty percent at fault, found non-party Five Star Janitorial Service to be forty-five percent at fault, and found Dfnt Pacific Beach Club to be fifteen percent at fault; therefore Plntf Bills to recover $397,500 from Dfnt Pacific Beach Club.)* During the course of litigation, Pacific Beach Club's insurer became insolvent and Dfnt State Guarantee Fund continued with its defense. Pacific Beach Club's attorney recommended payment of policy limits of $99,900, but Dfnt refused. After verdict was returned against Dfnt for $397,000, Dfnt assigned its bad faith claim to Plntf. Dfnt asserted the defense that it was statutorily immune from claims for bad faith and moved for summary judgment. Trial court granted motion. Decision affirmed by Court of Appeals in <u>Bills v. Arizona Property and Casualty Insurance Guaranty Fund</u>. Petition for review was filed with Arizona Supreme Court and petition was accepted. Following the acceptance, matter settled for $500,000.

*****************************************

11/25/99 - Judge CHARLES S. SABALOS - CV 332329 - MUMMERY (Barry M. Davis and Elizabeth Anne Upham of Piccarreta & Davis, P.C.)  v  De SANTIS MECHANICAL ENGINEERING (Daryl A. Audilett of Kimble, Nelson, Audilett, McDonough & Molla, P.C.) - WRONGFUL DEATH - PEDESTRIAN/AUTO. Decedent, male, age 84, was survived by his 81-year-old wife, who brought suit for his wrongful death. Decedent and Plntf had been married fifty-nine years. Plntf alleged Dfnt's driver was inattentive and struck Decedent, as

Decedent was crossing the street. Plntf alleged Dfnt's driver admitted, in his deposition, he was turning on the car radio just before impact. Plntf planned to call Robert L. Bleyl, Ph.D. P.E., a highway safety engineer, who was of the opinion an attentive driver would have been able to observe Decedent, in the roadway, for four to eight seconds before the collision, and Dfnt's driver was inattentive. Dfnt alleged Decedent was not in a crosswalk and stepped into the roadway, from behind a pole, and was reading his mail as he stepped into the roadway. Prayer: Just and reasonable compensatory damages (P Davis). (Carrier: Western Agricultural Insurance.) MATTER SETTLED BEFORE TRIAL FOR $430,000.

************************************************



Jury Verdicts & Settlements

The Trial Reporter Compendium

*Any Topic Any Injury Any Expert*

Hard copy expedited to your office in 48 hours.
Faxed to your office in 24 Hours.

The Trial Reporter

# EXHIBIT C

# EXHIBIT C

# Addendum & Erratum

THE TRIAL REPORTER of Central and Northern Arizona                    March 31, 1999
*********************************************************************************************

*Following is a more accurate report of a trial previously reported in the November 15, 1998 issue of* THE TRIAL REPORTER *of Central and Northern Arizona. The correction is in* **bold** *type.*

11/10/98 - Judge STEVEN D. SHELDON - CV 96-02277 - DIAMOND, D.D.S. (Charles J. Surrano, III, and John N. Wilborn of Surrano & Massey, P.C.) v GENERAL AMERICAN LIFE INSURANCE (Russell A. Kolsrud and Mark S. Sifferman of Norling, Kolsrud, Sifferman, Svejda and Davis, P.L.C.; and James L. Blair and Charles A. Struble of Renaud, Cook & Drury, P.A.) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. Plntf, in his late forties, a dentist, had total disability coverage with Dfnt. Own Occupational Rider on disability policy (which covered Plntf in the event he became unable to perform his occupational duties) limited disability benefits to sixty months. In 1985, Plntf developed carpal tunnel syndrome, which prevented him from practicing dentistry. Plntf applied to Dfnt for benefits, and was paid disability benefits, under his Own Occupational Rider for two months. Plntf attempted to resume his practice, but his work efficiency and income dropped significantly, and in April of 1988, Plntf again experienced difficulties with his hands. At that time, a diagnosis of recurring carpal tunnel syndrome was made, and Plntf was again declared totally disabled, from his occupation. Plntf then applied to Dfnt for policy benefits. Dfnt began paying disability benefits to Plntf, in July of 1988. Plntf alleged benefits should have continued until July of 1993. Dfnt paid Plntf residual disability benefits, from April of 1986 through April of 1988, as provided in the policy, and also in the Rider, because his

income was less than eighty percent of what it had been prior to his disability in 1985. Plntf alleged Dfnt ceased paying benefits in February of 1991, claiming the disability benefits had been exhausted under his five-year Own Occupation Rider, having applied the two years of residual benefits toward the sixty month total disability limit. Plntf also alleged that, although Dfnt took the position his benefits had been exhausted, under the terms of the Rider, in February of 1991, Dfnt had previously denied benefits to him, in November of 1990, on the grounds Plntf's symptoms were subjective, not objective, and, therefore, no benefits were due or owing under the policy. Plntf argued the policy definition did not include reference to either objective or subjective symptomatology. Plntf underwent an independent medical examination, one month before the purported, February of 1991, expiration of benefits, and the medical examiner opined Plntf was one hundred percent disabled, from his own occupation. Plntf alleged Dfnt did not advise him of the outcome of the independent medical examination, but instead sent him a final termination letter, on February 6, 1991. Plntf also alleged his name was one of fifty-eight names on a list, prepared by Dfnt, sometime in 1990, which identified policyholders, such as Plntf, who had reserves of $100,000 or more. Plntf argued the individuals on the list were targeted, on the basis of their reserve amounts, after Dfnt discovered severe financial losses, previously undisclosed, on its disability income lines of business, which resulted in an under-reserve problem of approximately $40 million to $60 million. Plntf alleged Dfnt conducted a number of meetings, and developed a strategic plan to deal with the disability income losses, by use of an aggressive plan to eliminate claims, such as Plntf's. Plntf

Case 2:14-cv-02474-DJH   Document 1-1   Filed 11/07/14   Page 61 of 72

THE TRIAL REPORTER of Cent( )nd Northern Arizona                                    March 31, 1999
**************************************************************

also alleged Dfnt altered its claims handling, in response to the financial crisis, on its disability lines, and Dfnt's Director of Claims, personally, reviewed the files of the fifty-eight claimants who had reserves of $100,000 or more. Additionally, Plntf alleged Dfnt's staff decided to keep everything on an "informal" level, so that "nothing in writing or in a memo" appeared in the files, in the event litigation should ever develop. Plntf argued Dfnt's systematic plan, a three-page memo stamped "confidential", to reduce the number of pending claims, included sending policyholders to multiple independent medical examiners; increasing paperwork requirements; offering buy-outs, which amounted to a )action of the policy value; withholding policy benefits while negotiating buy-outs; coupling buy-out offers with independent medical examinations and increased surveillance; sending investigators to perform in-depth surveillance and evaluating the financial vulnerability of policyholders, for the purposes of sizing them up for buy-out; withholding or stopping payment of benefits; and making threats or berating policyholders. Plntf alleged that nearly one-half of the fifty-eight policyholders targeted were eliminated within eighteen months. Plntf introduced evidence that showed Dfnt's Director of Claims was lauded, in his annual reviews, for "aggressive claims )handling" and for "his actions", which saved Dfnt millions of dollars. Annual reviews also commended Dfnt's Director of Claims on his success in representing Dfnt in various litigation matters. (Court ruled, by Summary Judgment, Dfnt had breached the contract, when it stopped paying Plntf his total disability benefits, in February of 1991. However, Court also ruled that no reference could be made to the Court's finding of the breach, at the beginning of the case, and reserved comment until the close of all evidence. Court had previously ordered $200,000 was owed as a minimum under the breach of contract) Plntf called policyholder Wizinsky, of Oxford, Michigan, who testified he had became permanently disabled, as a result of injuries sustained in an automobile accident, and his benefits were denied by Dfnt, in 1990. Mr. Wizinsky also testified he obtained files of all the policyholders on the list used by Plntf, in his case against Dfnt. Plntf also called Stephen D. Prater, J.D., an insurance law professor, who testified Dfnt was guilty of bad faith, when it stopped paying benefits to Plntf, based on an improper contract interpretation; and Dfnt committed bad faith, when it interrupted payments, and required Plntf to have an independent medical examination, but denied benefits on the basis he lacked objective symptoms, to prove disability. It was also Professor Prater's opinion, after review of the fifty-eight claimant files, that the files showed a sharp increase in the number of independent medical examinations, interruptions of payment, attempted low-ball buy-outs, and increased reporting requirements, within months of Dfnt's discovery that it was losing millions of dollars, in its disability income line of insurance. Additionally, it was Professor Prater's opinion Dfnt acted unreasonably in the use of many of these actions, against their insured. Additionally, Plntf called Mark R. Reiser, Ph.D., a statistician, who calculated total unpaid disability benefits of $200,896.77, past-due residual disability benefits in the amount of $139,394.55, and future residual disability benefits in the amount of $130,125; for a total of $470,416.32. Plntf was retrained as a medical machine repairman, and his annual income is approximately one-half of his income as a dentist. Dfnt denied liability, advancing the defense that its claims practices were reasonable, and within industry standards. (PLNTF SETTLED HIS CLAIM OF NEGLIGENCE AGAINST INSURANCE AGENT DRISCOLL FOR $35,000, DURING THE THIRD DAY OF TRIAL.) Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. No pretrial negotiations (D Surrano). Fourteen day trial. Jury out five-plus hours. AWARDED PLNTF **$768,291.60** COMPENSATORY DAMAGES, IN ADDITION TO

# Help the Jury understand with successful visual strategies.

## Visual Support for Legal Presentations

MEDICAL AND TECHNICAL ILLUSTRATIONS

COLOR AND B&W ENLARGEMENTS

DRYMOUNTING

CHARTS • GRAPHS
MAPS • DIAGRAMS
MODELS

PHOTOGRAPHY
SITE SURVEYS

VIDEO
ANIMATION

Graphic Law's powerful communication tools are designed for the courtroom and will deliver your message quickly and clearly. We accommodate your schedule, meet your deadlines and respect confidentiality.



**GRAPHIC LAW**

## 602 256-2605
## Don't settle for less.

Two Renaissance Square • 40 North Central Ave • Suite 107 • Phoenix, AZ 85004

# OVER 20,000 CASES IN OUR ARIZONA DATA BASE (AND STILL GROWING)

## The Trial Reporter

# LET US HELP YOU WITH YOUR JURY VERDICT QUERIES!

THE TRIAL REPORTER      March 31, 1999
************************************************

THE $200,000 GRANTED BY THE COURT; PLUS $58 MILLION PUNITIVE DAMAGES. UNANIMOUSLY.   (Plntf to file a motion for approximately $300,000 to $400,000 in attorney's fees, plus $70,000 in costs.)
************************************************

*Following is a report of a trial about which we were unable to obtain complete details prior to our publication deadline for the February 28, 1999 issue of* THE TRIAL REPORTER *of Central and Northern Arizona.*

2/24/99 - Judge WILLIAM J. SCHAFER, III - CV 97-13645 - SCOTT (John D. Shaw, a sole practitioner) v RADA (Harold H. Swenson of Ridenour, Swenson, Cleere & Evans, P.C.) - PERSONAL INJURY - REAREND.   Plntf, male, age 40, a handyman, alleged he was rear-ended by Dfnt.  Dfnt, male, age 52, a foreman in a plating shop, who was DUI, with a blood alcohol level of .21, admitted liability.   Plntf alleged he sustained cervical, thoracic, and lumbar soft tissue injuries; a strain and sprain of the shoulder; plus temporomandibular joint dysfunction.   Plntf called Francis M. Beaudrot, D.C.; and David H. Hill, D.D.S., both of whom opined Plntf's injuries were causally related, and his treatment was reasonable and necessary. Dfnt called Jon D. Zoltan, M.D., an orthopod, who testified Plntf had no evidence of a permanent injury.  Dfnt also called Allan K. Bernstein, D.D.S., a temporomandibular joint specialist, who was of the opinion Plntf's temporomandibular joint dysfunction was unrelated.   Prayer: Just and reasonable compensatory damages; just and reasonable punitive damages; plus $8,000 medical expenses.   Plntf made a pretrial demand of $30,000 - Dfnt offered $16,250 (D).   (Carrier: Allstate Insurance.)   Three day trial.   Jury out two hours. AWARDED PLNTF $76,000 COMPENSATORY DAMAGES, AND AWARDED PLNTF $25,000 PUNITIVE DAMAGES.   UNANIMOUSLY.
************************************************

# United States District Court Jury Trials

THE TRIAL REPORTER of Central and Northern Arizona          March 31, 2000

********************************************************************************

*Following is some additional information about a trial previously reported in the June 15, 1999 issue of* THE TRIAL REPORTER *of Central and Northern Arizona. The additional information is in bold italic type.*

6/8/99 - Judge PAUL G. ROSENBLATT - CV 96-754 PHX-PGR - McKENDRY (Steven C. Dawson of Dawson & Rosenthal, P.C.) v GENERAL AMERICAN LIFE INSURANCE and UL REVERE INSURANCE (Leon D. Bess, William M. Demlong, and Donald J. Sapala of Bess Kunz, P.C.) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. Plntf, male, age 47, an executive vice president of a commercial real estate company, purchased two disability incomes policies, from Dfnt General American. In 1988, Plntf filed a claim for partial disability, due to chronic fatigue syndrome, and Dfnt General American began making benefit payments to Plntf. Plntf alleged that, in 1990, Dfnt General American learned it was losing large amounts of money on its disability income policies, as a result of errors in reserves and underpricing. Plntf also alleged Dfnt General American devised a plan to correct the problem, by targeting all claims with reserves of $100,000 or more, in order to remove them from the books, by offering to "buy back" insureds' claims and policies, for a fraction of the reserve amount, and becoming more aggressive in claims handling. Additionally, Plntf alleged his name was on the targeted list, and he was subjected to covert surveillance, to two separate buy-out offers, and was forced to undergo three independent medical examinations. Plntf alleged all of Dfnt General American's efforts confirmed Plntf's partial disability. Dfnt General American, subsequently, sold its disability income policies to Dfnt Paul Revere. Plntf alleged Dfnt Paul Revere's memos criticized Dfnt General American's field investigators, for not being "claim closers", and concluded its claim handling could bring profitability back. After sending Plntf to Eugene R. Almer, M.D., a psychiatrist, for a fourth independent examination, Dfnt Paul Revere terminated Plntf's claim. Plntf called Stephen D. Prater, J.D., an insurance benefits expert and attorney, who was of the opinion Dfnts acted in bad faith. Plntf also called Mark R. Reiser, Ph.D., a statistician, who testified the agreement, between Dfnts, had given Dfnt Paul Revere a significant financial incentive to terminate claims. Dr. Reiser also calculated Plntf's past unpaid disability benefits. Dfnt General American argued its strategic plan was never implemented, and buy-out offers, surveillance, and independent medical examinations were legitimate claim handling tools. Dfnt Paul Revere argued that, based on Plntf's fourth independent medical examination, and on the opinion of Dfnt Paul Revere's medical director, the termination of Plntf's claim was reasonable. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntf made a pretrial demand of $7,500,000 - Dfnts offered $1 million (P). Nine day trial. Jury out two-plus hours. AWARDED PLNTF $350,000 COMPENSATORY DAMAGES (REPRESENTING $150,000 FOR PAST UNPAID DISABILITY BENEFITS, AND $200,000 FOR EMOTIONAL DISTRESS); AWARDED PLNTF $10,200,000 PUNITIVE DAMAGES, AGAINST DFNT GENERAL AMERICAN LIFE INSURANCE; AND AWARDED PLNTF $6,800,000 PUNITIVE DAMAGES, AGAINST DFNT PAUL REVERE INSURANCE. *On March 30, 2000, Court vacated the award, and granted Dfnt's motion for a new trial.*

********************************************************************************

# United States District Court Jury Trials

**THE TRIAL REPORTER**   December 15, 2001

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

12/10/01 - Judge SUSAN R. BOLTON - CV 99-154 PHX-SRB - GREENBERG (James A. Hertz of Friedman, Rubin & White, of Port Hadlock, Washington) v PAUL REVERE LIFE INSURANCE (William M. Demlong and Elliot H. Wernick of Bess Kunz, P.C.) - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER.  Plntf, male, age 49, alleged Dfnt was guilty of bad faith, when it terminated his disability benefits, despite overwhelming medical evidence he was suffering from depression, anxiety, and panic attacks.  Plntf called Donald Kelley, J.D., an insurance claims practices expert, to support his position.  Plntf sought $151,552 past policy benefits, and $395,893 future policy benefits.  Prayer: Just and reasonable compensatory damages; just and reasonable punitive damages; $151,552 past policy benefits; plus $395,893 future policy benefits.  Plntf made a pretrial demand of $1,700,000 - Dfnt refused to make an offer (P).  Ten day trial. Jury out two-and-one-half days.  AWARDED PLNTF $2,947,445.42 COMPENSATORY DAMAGES.  UNANIMOUSLY.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



**NEGOTIATING A SETTLEMENT?**

**TIP THE SCALES IN YOUR FAVOR. ORDER A COMPENDIUM OF COMPARABLE INJURIES.**

Call on White.

*The Trial Reporter*

**RPC**

**Research & Planning Consultants, LP**

Since 1972, RPC has provided consulting and litigation support to a national clientele. Our staff includes economists, accountants, attorneys, MBAs, financial analysts, statisticians, physicians, nurses and vocational consultants. We have the information technology to build and analyze large data and document basis in complex litigation.

**RPC PROVIDES LITIGATION SUPPORT IN EMPLOYMENT COMMERCIAL ENVIRONMENTAL HEALTH CARE AND PERSONAL INJURY CASES**

Visit our web site at
www.rpcconsulting.com
or contact us at
1-800-580-4567

*OFFICES IN AUSTIN, DALLAS AND TAMPA*

**OVER 33 YEARS OF ARIZONA JURY VERDICTS & SETTLEMENTS IN THE DATA BASE OF**

*The Trial Reporter*

**LET US HELP YOU WITH YOUR JURY VERDICT QUERIES!**

eleven to thirteen seconds to complete his turn in front of Plntfs' father. Dfnt also argued its driver's drug test result of "eighty-hundred-and-thirty-eight nanograms" demonstrated that the drug had been taken days before the instant accident, and methamphetamine use did not in any way impair his driving. Prayer: Just and reasonable compensatory damages, for loss of consortium (P Yearin). MATTER SETTLED BEFORE TRIAL FOR $150,000 TO EACH OF TWO PLNTF CHILDREN. (See companion case, CV A418464, published in the May, 2003 issue of *THE TRIAL REPORTER of Nevada.*)

********************************************

4/2/03 - Judge FREDERICK J. MARTONE - CV 2000-001386 - CEIMO, M.D. (Anita Rosenthal and Steven C. Dawson of Dawson & Rosenthal, P.C.; and Jeffrey K. Rubin of Friedman, Rubin & White, of Anchorage, Alaska) v GENERAL AMERICAN LIFE INSURANCE COMPANY, PAUL REVERE LIFE INSURANCE COMPANY; and PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY (Dawn M. Bergin, Thomas Klinkel, and Brenden J. Griffin of Lewis and Roca, L.L.P.) - BREACH OF CONTRACT - FIRST PARTY BAD FAITH BY AN INSURANCE PROVIDER. Plntf, female, age 45, a physician, specializing in cardiovascular diseases, filed a disability claim with Dfnts, which was denied. Plntf alleged Dfnts had a corporate plan to increase profits, by increasing denials and terminations of claims, through a variety of unfair practices. Plntf also alleged Dfnts breached the contract and acted in bad faith, when Dfnts wrongfully denied her disability claim. Plntf called Stephen D. Prater, J.D., an insurance claims practices and procedures expert, who was of the opinion Dfnts' claims practices were designed to deny legitimate claims, such as Plntf's claim. Dfnts denied liability, advancing



**NEGOTIATING A SETTLEMENT?**

**TIP THE SCALES IN YOUR FAVOR. ORDER A COMPENDIUM OF COMPARABLE INJURIES.**

*Call or Write:* **The Trial Reporter**

the defense that there was no plan to deny legitimate claims. Dfnts argued Plntf was not disabled, under the terms of the policy, and, therefore, no disability coverage existed. Plntf called Henry Stotsenberg, C.P.A., who testified that, after Dfnts instituted the change in their claims practices, losses on Dfnts' disability income block of business dramatically shifted. Prayer: Just and reasonable compensatory damages; plus just and reasonable punitive damages. Plntf made a pretrial demand of $5,500,000 - Dfnts offered $2,100,000 (P Dawson). During closing arguments, Plntf's counsel asked jury to find Plntf totally disabled from February, 1995, through June, 2000. Plntf's counsel also asked jury to award Plntf a fair and reasonable amount for emotional distress, and assess a meaningful punitive sanction. Defense counsel argued Plntf was not disabled, under the terms of the policy. Nine day trial. Jury out ? hours. AWARDED PLNTF $1,250,000 COMPENSATORY DAMAGES ON HER BREACH OF CONTRACT CLAIM; AWARDED PLNTF $5,400,000 COMPENSATORY DAMAGES ON HER BAD FAITH CLAIM; AND AWARDED PLNTF $79 MILLION PUNITIVE DAMAGES.
*************************************************

# BioRec'
## *The Recognized Choice for Engineering Expertise*

## Accident Reconstruction
## Biomechanical Analysis
## Mechanical Failure Analysis
## Human Factors

- Industry Experienced
- ACTAR Accredited
- Professionally Licensed

**Joseph D. Peles, Ph.D.
S. Dale Fridley, P.E.
Gary T. Yamaguchi, Ph.D.
Michael J. Kuzel, M.S.
Joseph E. Manning, B.S.**

Biomechanics Research & Consulting, Inc.
410 S. Perry Lane, Suite 4, Tempe, AZ 85281
Phone: 480-966-0143    Fax: 480-966-0126
www.biorec.com



# Graphic Law
## Legal Presentations and Technologies

**Graphic Law** works closely with your firm to:
- Create compelling demonstrative presentations
- Design professional litigation exhibits
- Consult with experts and associates

Electronic Courtroom Presentations
Design & Illustration
Photography & Site Surveys
Equipment Rental
Reprographic Services & Enhancements



## SEAT BELT DEFENSE CASES
### Order a Compendium from
### The Trial Reporter

# EXHIBIT D

# EXHIBIT D

☒ FILED ____ LODGED
☐ RECEIVED ____ COPY

OCT   7 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Brett D. LEAVEY,

      Plaintiff,

  v.

UNUM/PROVIDENT CORP., et al.,

      Defendants.

No. CV-02-2281-PHX-SMM

**FINAL VERDICT FORMS**

Dated this **29** day of September, 2005.

_____
Stephen M. McNamee
Chief United States District Judge

**SCANNED**

**Verdict for Plaintiff on Claim for Breach of Duty of Good Faith and Fair Dealing**

We the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do find in favor of plaintiff Brett Leavey on his claim of breach of the covenant of good faith and fair dealing against defendants UnumProvident Corporation and Provident Life and Accident Insurance Company in the following amounts:

1.  For mental, physical, and emotional pain and suffering experienced and which will be experienced in the future, in the amount of $ _____4,000,000.00_____.

2.  For policy benefits (reduced to present value) for the period in which the plaintiff will be totally disabled in the future, in the amount of $ _____809,028.00_____.

DATED this 7ᵗʰ day of _October_, 2005.

_____Juror #4_____
Jury Foreperson

- 2 -

1
2
3
4

**Verdict for Plaintiff on Claim for Punitive Damages**

5
6    We the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do

7  find in favor of plaintiff Brett Leavey on his punitive damages claim against defendants

8  UnumProvident Corporation and Provident Life and Accident Insurance Company in the

9  amount of $   15,000,000.00   .

10
11
12
13
14
15
16    DATED this 7ᵗʰ day of   October   , 2005.

17
18
19                              _Juror #4_
20                              Jury Foreperson

21
22
23
24
25
26
27
28                              - 3 -

1
2
3
4
**Verdict for Defendants on All Claims**
5
6       We the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do
7   find in favor of defendants UnumProvident Corporation and Provident Life and Accident
8   Insurance Company on all claims.
9
10
11
12
13
14
15
16   DATED this _____ day of _____, 2005.
17
18
19                                   _____
20                                            Jury Foreperson
21
22
23
24
25
26
27
28                                 - 4 -

1
2
3
4

### Verdict for Defendants on Claim for Punitive Damages

5
6      We the Jury, duly empanelled and sworn in the above-entitled action, upon our oaths, do
7  find in favor of defendants UnumProvident Corporation and Provident Life and Accident
8  Insurance Company on the claim for punitive damages.
9
10
11
12
13
14      DATED this _____ day of _____, 2005.
15
16
17                                          _____
18                                               Jury Foreperson
19
20
21
22
23
24
25
26
27
28
                                        - 5 -